No. 20,477.

GILBERT JOHNSON, *Appellant*, v. THE MENNONITE MUTUAL FIRE INSURANCE COMPANY OF NEWTON, *Appellee*.

SYLLABUS BY THE COURT.

1. INSURANCE—*No Completed Contract.* The evidence and findings show that the minds of the parties never met, and hence no contract between them was ever entered into.

2. INSURANCE—*Vacancy Clause of Policy—Violated.* The policy submitted to but not accepted by the plaintiff, contained a thirty-day vacancy clause. The findings and evidence indicate that this clause was violated by leaving the property vacant for more than thirty days, thereby avoiding the policy had it been accepted.

Johnson v. Insurance Co.

Appeal from Greenwood district court; ALLISON T. AYRES, judge. Opinion filed March 10, 1917. Affirmed.

*Howard J. Hodgson,* of Eureka, for the appellant.

*J. C. Culver,* of Yates Center, and *W. S. Marlin,* of Eureka, for the appellee.

The opinion of the court was delivered by

WEST, J.: This was an action on a policy issued by the Mennonite Mutual Fire Insurance Company of Newton. The petition alleged the issuance of the policy, a total loss of the property, proof of loss and failure to pay. The answer in substance denied that any policy was ever issued to or received by the plaintiff. It alleged, on the contrary, that it was agreed between the plaintiff and defendant's agent that a policy to be issued should be satisfactory to the former or he would not accept it and would not be required to take it, but if as represented to him he would pay a cash premium of $4.35 and take the policy; that according to the statute and the determination of the directors, one-fifth of the premium note should be paid in cash; that the defendant issued a policy in accordance with a printed application, and sent the same to the agent to be delivered when he had collected the cash premium; that the agent sent the policy to the plaintiff by mail for his inspection, and later, when calling on him, was told by the plaintiff that the latter would not accept the policy, that it was not as represented, that he did not want it, had not accepted it, and would not pay for it; that later he wrote the company repudiating his note and application, stating that he would not insure in the company unless it would leave the vacancy clause out of the policy, and if it had the note to send it to him; that no payment was ever made and that no liability had arisen. Further, that even if the policy had been accepted it would have been void before the destruction of the buildings, for the reason that they were vacant and unoccupied for more than thirty days prior thereto, and that no consent in writing to a continuance of a thirty-day vacancy clause contained in the policy was ever given. The reply reiterated some of the allegations of the petition and alleged that the plaintiff had never

surrendered his policy nor had it ever been canceled by the company.

In reply to a letter received from the plaintiff the company wrote that it could issue a vacancy permit for ninety days, and if not then occupied such permit could be renewed; that in response to his desire to have the note returned it was stated that one-fifth was payable in cash—

"But if you wish the policy cancelled now and the note returned we will charge you the customary short rate as required by section fourteen of our by-laws, which would amount to $3.45. Upon receipt of this amount and the policy, or in case the policy can not be found the enclosed slip signed by you, we will return your note. But if you will accept a vacancy permit according to our rules and make the required first payment to our agent the policy will be in force."

After the loss the plaintiff called on the secretary of the company for a settlement and was told that he had not made the required cash payment. The secretary testified that—

"He admitted that he never had paid anything and that he did not want the policy under those conditions, on account of the vacant permit—that he wanted a policy that would be in force even if the building was vacant and of course we had told him before in a letter and I told him at that time that we could not issue such a policy, but that we could issue vacancy permits for a certain time."

The jury found, among other things, that Johnson stated that he would not accept the policy when it should come unless it suited him; that when it was delivered to him he said to the agent that he would not accept it, that he would not pay for it, and that he wanted nothing to do with it. That he made no payment or offer to pay at any time before the alleged destruction of the property. They also found that the company or some agent waived the payment of the required cash premium.

A careful examination of the entire record convinces that the minds of the parties never met and that the alleged contract lacked this essential prerequisite. It is plain that the policy submitted to the plaintiff did not suit him and that he declared he would not have it or pay for it and did not pay for it. While it is true he could have received back his note by surrendering his policy or the slip requested by the company, and did not do so, having lost the policy, as he testified, still the failure of the company to return the note without receipt

of the policy or slip did not operate to constitute a contract between the parties to which they had never agreed.

There are certain items of testimony seized upon by the plaintiff that squint somewhat in the direction of a contract, but the entire testimony abundantly supports the conclusion of the trial court and furnishes no sufficient ground for overturning it.

While the point is not pressed in the brief, nevertheless the testimony indicates that the allegation of nonliability on account of vacancy was supported thereby. Section 19 of the by-laws, printed on the back of the policy, provides that if any building becomes or remains vacant or unoccupied for a period of thirty days the policy thereupon shall become void unless written notice of such vacancy be given to the company and its consent to a continuance of the policy be given by the secretary in writing. The jury returned the following answers:

"Q. Who, if anyone, occupied the property described in said application and alleged to have been insured, at the time application was sent to the defendant insurance company? A. No one.

"Q. Was said property vacant and unoccupied at the time said Gilbert Johnson, plaintiff, wrote to the said Insurance Company on or about the 23rd day of June, 1914? A. Was vacant.

"Q. Was said property alleged in the petition to have been insured, ever occupied after the said 23rd day of June, 1914, and if so during what time was it occupied after date of the policy? A. Yes, about 30 days prior to cyclone.

"Q. When was said property destroyed by wind and tornado? A. Oct. 9th, 1914."

Plaintiff testified, as shown by the counter-abstract, that his son-in-law was occupying the house when the request was made to insure without a vacancy permit.

"Q. Sleeping in the house? A. Yes, sir.

"Q. How long did that continue. A. Well, it must have been for thirty days.

"Q. And then he left the house after thirty days? A. Well, when the storm came up he run in the cave. He was living there then.

"Q. Well, how long after Young was talking to you at the livery barn before the property was destroyed? A. Well, that must be along in June sometime.

"Q. When was the property destroyed? A. It was the 9th day of October, my son-in-law went in there along the 1st of Sept. I could not tell you the date, Mr. Travis farmed it and then this other son-in-law came from Colorado and he moved down in the house."

The jury returned a verdict for the plaintiff, but the defendant moved for a judgment *non obstante* on the special questions, which was sustained.

We find no prejudicial error in any of the rulings made by the trial court and the judgment is affirmed.