## COLUMBIA INS. CO. v. KING.

Circuit Court of Appeals, Fifth Circuit, February 26, 1929.

Rehearings Denied March 25, 1929 and April 3, 1929.

No. 5424.

888

G. E. Mabry, O. K. Reaves, D. E. Carlton, and E. C. Johnson, all of Tampa, Fla., for appellant.

Fred T. Saussy, of Tampa, Fla. (E. R. Dickenson and Watson & Saussy, all of Tampa, Fla., on the brief), for appellee.

Before WALKER and BRYAN, Circuit Judges, and GRUBB, District Judge.

GRUBB, District Judge. This is an appeal from a final decree of the District Court for the Southern District of Florida in a cause in equity, ancillary to an action at law, in which the plaintiff (appellee) was seeking to recover of the defendant (appellant) on a policy of fire insurance for the loss of a stock of goods. The law action was instituted by plaintiff in the state court, and removed by the defendant to the District Court. Upon its removal the plaintiff filed his bill in the District Court in aid of the suit at law, seeking by it to compel the defendant to issue a rider, to be attached to the policy sued on, antedating the occurrence of the fire, authorizing the insured to remove the stock of goods and fixtures insured to a new location.

The right of the plaintiff in the equity suit to the relief asked for depended upon whether a valid agreement was made by the defendant to issue the rider. The District Court so held, and entered its decree for the issuance of the rider, as prayed for in the bill. The suit at law was instituted on the 6th day of August, 1927. The suit in equity was begun October 31, 1927. The policy was issued October 21, 1926. The fire occurred December 6, 1926. The plaintiff in the equity suit died, pending the final decree, and the suit was revived in the name of his administrator, the appellee.

The right of the present plaintiff to relief depends upon: (1) Whether or not the insured was promised by Wolvington, a soliciting agent of the defendant, after the issue of the policy, that a rider would be issued to him authorizing a change of location for the insured goods and fixtures; and (2) whether or not (a) Wolvington had authority to bind the defendant by such promise, or (b) whether, in the absence of such authority, the promise was performed or ratified by the defendant or its authorized agent before the fire.

1. The evidence as to the promise by Wolvington to permit the removal and issue the rider evidencing it is that of the original plaintiff, Giddens, corroborated in part by his father and the witness Hawkins. As against this is the evidence of Wolvington, to the effect that when applied to for the removal permit by the insured, he stated that he would have to refer the request to the special agent of defendant, Turner. It is not disputed that there was actually signed by defandant's agent Grant a removal permit which was produced from the defendant's possession and introduced in evidence, and which bore the stamp of the Florida Inspection and Rate Bureau purporting to show its receipt December 2, 1926, at its Tampa office, and a second stamp purporting to show a receipt of the rider on December 3, 1926, by Strickland and Travis, general agents of the defendant, at Jacksonville. It was never delivered to the insured. The insured, in fact, removed his goods and fixtures to the new location. From these undisputed facts, and the other evidence, we conclude, as did the District Judge, that the insured before the fire, and before the removal of his goods to the new location, in which they were burned, was told by Wolvington that it would be all right for him to move his goods, that they would be covered when removed, that a rider to that effect had been signed by Grant, the defendant's agent, and would be

delivered to him, and that the insured removed his insured property in reliance upon Wolvington's representations and promises.

2. We find it unnecessary to determine whether Wolvington had authority to bind defendant by his oral promise to the insured, because the evidence is convincing that it was ratified by Grant, the Tampa agent of defendant, whose authority to issue the rider is not disputed. The insured testified that on or about November 20, he applied to Wolvington, in his old store, for a removal clause, and that Wolvington said: "Go ahead and move; that he would see that I was protected and taken care of," and that on a subsequent occasion, before the removal and before the fire, he was told by Wolvington "to go ahead and move, that I was fully covered," and again, "that the endorsement was issued and that he would deliver it to me, as soon as possible." The rider itself purports to have been signed by Grant on November 30, 1926; stamped by the Florida Inspection and Rating Bureau as having been received at its Tampa office December 2, 1926, and by Strickland and Travis as having been received by them at Jacksonville, December 3, 1926. The witness Grant testified that he had no recollection of having seen or signed it, but admitted it bore his signature. Wolvington testified that he directed Grant's stenographer, Miss Smith, to prepare it and hold it until Turner had approved it. No satisfactory explanation as to how it got to the Florida Inspection and Rating Bureau, except the supposition that it was taken there by mistake of an employé of the Bureau, is advanced by defendant. The witness Grant testified that the course of business was to make three copies of the rider; that "one of the riders is pasted to the daily in the office, one given to the insured, and the other is *mailed* to the local inspection bureau in Tampa, and they in turn send it on through to the company."

From the evidence in the record, we think the fair inference is that the insured applied to Wolvington for the removal permit; that Wolvington reported the application to Grant before November 30; that Grant acceded to Wolvington's request that it be issued; that Wolvington asked Miss Smith to prepare it and present it to Grant for his signature, which she did; that it was signed by Grant and issued to the Florida Inspection and Rating Bureau by mail, and forwarded by the Bureau to Strickland and Travis at Jacksonville in the regular course of business, the insured's copy having been retained; that Wolvington, after securing Grant's assent, reported to the insured that the rider had been signed and that he would receive it in due course, and that the insured, on that assurance, moved his goods and fixtures to the new store. Wolvington's oral promise and agreement was approved by Grant, who had authority to issue removal permits, when he signed the rider, and it became a binding agreement when approved in writing by Grant, and sent by him, in the regular course of business, to the Bureau. It might well be held to be an issuance of the permit, though no copy was delivered to the insured to be attached to the policy. It at least constituted an agreement to permit the removal of the insured property to the new location, and to cover it there, made by an agent of the insurer, and ratified by the agent of the insurer vested with authority to make such agreements. The agreement was acted upon by the insured only after notification to him by Wolvington that the rider had been issued and would later reach him, and before the destruction of the insured property. In order to show in the action at law that the insured property, after being moved from its location, when the policy issued, was nevertheless entitled to the protection of the policy, the plaintiff was entitled to have the agreement to permit the removal completed by the delivery to it as evidence thereof of a rider dated before the fire, authorizing the removal of the insured property, for the purpose of attaching it to the policy sued on in the action at law, and made part of the contract of insurance. The defendant's agent Grant received the full premium for one year on the policy shortly after the fire. The defendant has retained the full premium until now. In its answer to the bill of complaint in this case filed February 13, 1928, it first offered to return the premium or the unearned part of it. The bill of complaint was filed October 31, 1927. Before answering, defendant filed a motion to dismiss, which was denied on January 20, 1928. The original bill fully disclosed the receipt of the full premium by Grant, in December, 1926. Retention of the full premium, after notice, and until the defendant had by its motion contested the equity of the bill, was inconsistent with its present position that the insurance ceased to remain in force after the removal of the insured property to a new location, and was a recognition that the policy continued in force after, and in spite of, the removal. It does not lie in the power of defendant to retain the unearned portion of the premium, and, at the same time, resist plaintiff's right to a decree by its motion to

dismiss, after the bill gave defendant full information as to the payment of the premium, and the circumstances attending it. Concordia Fire Ins. Co. v. Sudduth (C. C. A.) 4 F.(2d) 525; Home Ins. Co. v. Hightower (C. C. A.) 22 F.(2d) 883; Malo v. Insurance Co. (Mo. App.) 282 S. W. 78; Mechanics' & Traders' Ins. Co. v. Smith, 79 Miss. 142, 30 So. 362.

The plaintiff was entitled to the relief asked in the bill of complaint and accorded him by the decree of the District Court, and its decree is affirmed.