No. 32,058

F. H. KERR, *Appellee*, v. THE NATIONAL FIRE INSURANCE COMPANY OF HARTFORD, CONNECTICUT, *Appellant*.

(41 P. 2d 726)

Opinion filed March 9, 1935.

*W. W. Brown,* of Parsons, for the appellant.

*W. D. Atkinson,* of Parsons, *J. M. Hewitt,* of Oswego, and *Harry L. Ladbury,* of Topeka, for the appellee.

The opinion of the court was delivered by

THIELE, J.: This is an appeal from a judgment allowing recovery on a policy of insurance.

Although error is assigned in a number of particulars, the principal questions are whether the policy of insurance was in force at the time the loss occurred, and whether the evidence as to value supports the judgment.

Briefly stated, plaintiff's evidence with respect to the procuring of the insurance, and what followed up to time of the loss, was as follows: On April 13, 1930, plaintiff then being a resident of Topeka, procured from defendant's agent there a policy of insurance in the amount of $1,000, covering "household and personal effects of every description . . . belonging to insured and all members of the insured's family, usual or incidental to the occupancy of the premises by the insured as a dwelling," etc. In March, 1932, plaintiff and his family moved to Oswego, where they occupied a dwelling situated on a fifty-acre farm, thirty acres of which were within the city limits. The house was within the city. Just before leaving Topeka, plaintiff's wife called on the insurance company's agent in Topeka and informed it that they were moving to Oswego, and desired to cancel the insurance and would like to get the refund. The agent was the Shawnee Investment Company, and the clerk in charge told plaintiff's wife that need not be done, that the policy could be transferred, and gave her the name of the company's agent at Oswego. When she arrived at Oswego she called on the agent there to have the insurance transferred. The agent refused to transfer, claiming that a country and not a city rate applied. Plaintiff's wife offered to pay the difference between the Topeka and Oswego city rates, but the agent refused to transfer unless plaintiff paid the country rate. Nothing further was done by the agent. There is controversy concerning whether plaintiff's wife then wrote the Topeka agent and whether the agent received her letter, but it was never answered. On February 9, 1933, most of the property was destroyed by fire. The company refused payment and this suit followed.

Was the insurance in force at the time of the fire? At the trial it was stipulated that at the date of the policy the Shawnee Investment Company was the company's agent at Topeka, and F. J. Bell was manager of its insurance department; that the investment company ceased to be such agent on March 14, 1932, and Mr. Bell was

agent thereafter; that Pierce was the agent at Oswego; that the authority of the local agents was to issue policies of insurance, to assent to assignments or transfers, to make indorsements, and to do such other things as shall from time to time be authorized by the company.

Appellant's contention is that when plaintiff moved his goods from Topeka to Oswego he took them from a place where the company was willing to assume the risk to a point where a higher rate prevailed; that the company, through its Oswego agent, had refused to continue the insurance longer without the payment of additional premium, which plaintiff had refused to pay; that the company was privileged to carry, or not to carry, the insurance, and it had the right to refuse, as it did. The principal case cited in support of this theory is *Johnson v. Insurance Co.*, 100 Kan. 53, 163 Pac. 1074. That case is not in point, for there the parties never agreed on any contract; no premium was ever paid and no policy was ever issued. In addition, the appellant overlooks certain pertinent facts: The policy was properly issued at Topeka. The company, through its agent at Topeka, was asked to cancel, and for practical purposes may be said to have refused, for it advised that the insurance could be transferred and for plaintiff to see the agent at Oswego; after the removal that was done; there the agent refused to transfer unless the country rate were paid; plaintiff insisted the city rate applied and offered to pay any difference there was in the two rates, to which the agent would not assent. When the Oswego agent refused the transfer, plaintiff wrote the Topeka agent, who says he never received any letter. Plaintiff never received any reply; although there is considerable space devoted to the proposition of whether plaintiff did write the letter, and whether the agent did or did not receive it, it does not seem to be of any controlling significance, for it is undisputed that the company was aware of the removal of the goods and the attempt to transfer the insurance. With that information at hand, the company did not cancel the insurance and return the unearned premium, but permitted the policy to remain in force and kept the premium. Neither does the fact the Oswego agent thought the farm rate applied alter the situation. Under that circumstance, it would seem all the more incumbent on the company to cancel the policy and return the unearned premium. What is said in *Hulen v. Insurance Co.*, 80 Kan. 127, 102 Pac. 52, is pertinent here:

"A policy of insurance covering a stock of merchandise contained the

usual condition that it should be in force only while the property was located at a certain place. The stock was afterward removed to another location, where the rate of premium was higher. The company was duly notified of the removal, with the request that the policy be canceled and the unearned premium returned. It replied by letter suggesting that the insured see the local agent of the company and have the policy transferred to the new location. The insured thereupon saw the local agent, who orally agreed to a transfer of the policy. The company retained the unearned premium. *Held,* that the company was bound by the act of its agent, and that the failure of the company or its agent to notify the insured of the increased rate of premium and demand payment therefor was a waiver of the higher rate." (Syl. ¶ 2.)

See, also, 26 C. J. 330, where it is said:

"It is also stated generally that where the insurer does not, within a reasonable time after acquiring knowledge of a breach of condition, assert its right to forfeit or cancel the policy, the policy continues in full force and effect and the right to declare a forfeiture is lost."

Appellant complains that incompetent evidence was received as to the city rate in Oswego. Perhaps by reason of R. S. 1933 Supp. 40-911 to 40-916, both inclusive, there was better evidence as to whether a rate had been established at the point in question, and what it was, but the witness whose evidence is complained of stated he was an insurance agent at Oswego, knew there was a published schedule of rates prepared in accordance with the above statutes and what the rate was. There is no complaint that his testimony was not true, nor any contention that a farm and not the city rate controlled. There was no prejudicial error in the admission of the above evidence.

It is our judgment the policy of insurance was in force on the date of the fire.

The question of proof of the amount of loss leads us to a consideration of the evidence to determine whether it supports the court's finding as to the value of the destroyed and damaged property. Under the policy, the company's liability was limited to the actual cash value of the property at the time of the loss, ascertained or estimated according to actual cash value, with proper deduction for depreciation, and shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality. The amount of the policy was $1,000. The loss was not total, some goods being destroyed and others only damaged. Attached to the petition was an itemized list showing the destroyed

articles and their value and also itemizing the damaged articles and the amount of the damage, the total being $1,834.96. Plaintiff's wife was the principal witness as to value, although she and her husband both testified that they made the list; that they knew the usable condition of the property and observed its condition and with that knowledge fixed the value as above noted. Defendant offered no testimony as to value. Appellee cites authorities as to property having no market value, and that real value may be ascertained from such data as is available, and that cost, use and condition are elements for consideration. We have no quarrel with that general principle, but here the only evidence shows that the values put on the property destroyed are the original costs, and in one instance a greater value. A twelve-year-old linoleum rug, costing $14, is valued at $15, a four-year-old suit of clothes, which cost $30, is valued at that figure, four toothbrushes of which the wife said, "I cannot tell how long they have been used," are listed at $2. Men's and women's underwear, clothes, socks and neckties, although used for some years, are included at cost, as are two electric washing machines, one three and the other seven years old. And there are other articles valued at cost which the family has used for periods varying from two or three up to thirty-four years. And referring to the whole list, plaintiff's wife testified that as near as she recollected, the prices in the list were the cost prices of the articles. So far as the record shows, there was no other testimony of value, other than Mrs. Kerr's insistence the articles were not for sale and were in good condition. Neither she nor her husband put any value on the property as used or depreciated. Included in the list were medicines at $10 and groceries at $50, which the court refused to allow. It then fixed the loss at $846.43. We find no basis in the evidence for this verdict, and for this reason a new trial is ordered on the question of amount of loss. Because of questions raised as to certain items included in the list, they will be noticed briefly. The trial court ruled correctly in excluding the medicines and groceries. The set of tools used by a paper hanger are not included under the terms of the policy and should be excluded. Appellant insists that articles of clothing are not household furniture and that may be conceded. However, the policy included personal effects belonging to the insured and members of his family, and we hold this covers articles of wearing apparel and the like. A like

complaint is made that the cream separator, valued at $100, and some other articles used in taking care of milk, valued at $12.75, are not household goods, especially in view of the fact that the plaintiff and his family are conducting a dairy. A majority of the court is of the opinion that these items were properly included.

That portion of the trial court's judgment holding the policy of insurance sued on in full force and effect at the time of the loss is affirmed; that portion of the judgment finding the value of the destroyed and damaged goods is reversed, and the cause is remanded for a new trial on the question of such value.