**ORIOLE PAPER BOX COMPANY, Inc., a body corporate, and Ellsworth H. Steinberg, Appellants,**

**v.**

**RELIANCE INSURANCE COMPANY OF PHILADELPHIA, a body corporate of Pennsylvania, Pearl Assurance Company, Limited, a body corporate, Ohio Farmers Insurance Company, a body corporate, Appellees.**

**No. 7545.**

United States Court of Appeals Fourth Circuit.

Reargued April 24, 1958.

Decided June 12, 1958.

708

Joseph B. Axelman and Ellsworth H. Steinberg, Baltimore, Md., for appellants.

Charles Markell, Jr., Baltimore, Md. (Markell, Veazy & Gans, Baltimore, Md., on brief), for appellees.

Before SOBELOFF, Chief Judge, and SOPER and HAYNSWORTH, Circuit Judges.

SOPER, Circuit Judge.

This appeal was taken from an order of the District Court dismissing the claim of Oriole Paper Box Company, Inc. against three insurance companies for loss by fire of a stock of goods covered by standard insurance policies at the location 519–525 West Pratt Street, Baltimore, Maryland. Ellsworth H. Steinberg, mortgagee of the insured goods, was permitted to intervene as party-plaintiff in the District Court. The case was tried before the District Judge without a jury, who found a verdict for the defendants and dismissed the case on the ground that the fire took place at No. 749–755 West Pratt Street, a more hazardous location to which the goods had been removed without the written consent of the insurance companies to cover the goods at the new location.

Oriole was represented in its insurance transactions by Green & Company, insurance brokers and agents in Philadelphia, who placed the insurance on November 2, 1954, through John C. Danaher & Company, Inc., Baltimore general agents of the insurance companies which issued the policies. In April 1956, Oriole notified Green & Company that it proposed to move its place of business to 749–755 West Pratt Street and Green sent a representative to Baltimore to examine the new location. On April 23, the move was completed and Oriole telephoned Green to have the policies bind the new location. On the same day Green sent to Danaher a memorandum which referred to the outstanding policies and contained the request "please bind new location at 749–55 West Pratt Street, Baltimore." This notice was received and filed at Danaher's office in Baltimore, but no acknowledgment of its receipt was made and no action was taken upon it. Despite the fact that Green received no answer to its request of April 23, it did not communicate with Danaher or receive any communication from Danaher in regard to the insurance prior to October 2, 1956, when the fire took place. When that event occurred, Oriole notified Green and the latter notified the presi-

dent of the Danaher Company, who went to its files and found Green's communication of April 23. No one in the Danaher office had any recollection of having seen the binder request prior to the fire.

The old location had a sprinkler system and an annual rate of premium of 36 cents per $100.00. The new place had no sprinkler system and at the time the move took place no premium rate for it had officially been made. On August 1, 1956, after an application by Green in July, the Fire Underwriting Bureau in Baltimore promulgated a rate of $2.64 per $100.00, effective July 9. Subsequently and before the fire, Oriole took certain steps recommended by the Bureau to reduce the rate 50 per cent, but no inspection as to compliance with the recommendations had been made before the fire took place.

Each insurance policy contains the statement that Oriole is insured "at location of property involved" against all direct fire loss "to the property described hereinafter while located or contained as described in this policy".

Each policy also contains the following provisions, as to the description and location of the property covered:

"Coverage B & C—/ Brick covered roof building occupied by assured as Mgf carbord [sic] boxes, and by others for purposes not more hazardous than Mfg of men's clothing located 519–25; 527; 529; rear 529; 531–35 W. Pratt Street; 414–423 Light St., and 16–34 E. Barre St. thru to S. Charles Street, Baltimore, Maryland.

\* \* \* \* \* \*

"Coverage B: Contents Other Than Stock—Being furniture, fixtures, machinery, equipment and other personal property of every description (except as otherwise excluded) while contained in, on or attached to the building(s) and additions described on the first page of this policy.

"Coverage C: Stock—Where the term "Stock" is used it shall be understood to include stock, materials and supplies, including packages for or containing the same, usual, or incidental to the business of the insured, while contained in, on or attached to the building(s) and additions described on the first page of this policy, except as otherwise excluded."

Each also contains the following language with respect to "Added provisions":

"The extent of the application of insurance under this policy and of the contribution to be made by this Company in case of loss, and any other provision or agreement not inconsistent with the provisions of this policy, may be provided for in writing added hereto, but no provision may be waived except such as by the terms of this policy is subject to change."

Each likewise contains the following provisions:

"Conditions suspending or restricting insurance. Unless otherwise provided in writing added hereto this Company shall not be liable for loss occurring (a) while the hazard is increased by any means within the control or knowledge of the insured."

Each also contains the following language after the caption "Waiver provisions":

"No permission affecting this insurance shall exist, or waiver of any provision be valid, unless granted herein or expressed in writing added hereto."

Oriole bases its appeal upon the proposition that the insurance companies by failing to cancel the policies and return the premiums, when they were notified of the removal of the goods to the new location, indicated their consent to the removal and waived the right to insist on a provision of the policy that no change in the contract could be made except in writing, and also estopped themselves from making the defense that

under the contract they had no liability for the loss because they had not agreed in writing to the change to a different and more hazardous location.

In support of this contention, Oriole offered evidence in the District Court of a custom in the Philadelphia and Baltimore area to the effect that the failure of an insurer to notify an insured of the rejection of an application for new insurance or for endorsement on an old policy was the equivalent of a binder. There was, however, contradictory evidence on the part of the insurance companies that no such customs exists, and the judge made the finding of fact that the custom was not established by the weight of the credible evidence. This point was not discussed in Oriole's brief in this court although it was mentioned in oral argument. We accept the court's finding since no good reason to the contrary appears.

The plaintiff also relies on certain decisions in other states which announce the rule that if an insurance company is notified of the removal of the insured property to a new location, it will be estopped from denying liability for a subsequent fire loss unless it cancels the policy and returns the premiums within a reasonable time.[1]

There are no decisions to this effect in Maryland. Oriole, however, relies on the decision in Maryland Fire Ins. Co. v. Gusdorf, 43 Md. 506, in which a fire insurance policy contained the provision that "anything less than a distinct agreement endorsed on this policy shall not be construed as a waiver of any written or printed condition, restriction or stipula-

tion herein contained." It was shown that the insured, contemplating the removal of his goods to a new address, went personally to see the president of the insurance company before the goods were removed and told him of the intent and inquired whether the removal would affect the insurance. In reply, the president said that he would "fix the matter" and that the insured need not produce the policy to have the company's permission endorsed upon it. The insured, relying upon this assurance, moved the property to the new location and took no further steps in the matter. The goods were destroyed by fire and the insured brought suit on the policy to which the insurance company raised the defense that the quoted provision of the policy had not been complied with. The Court, however, held that the insurance company was estopped to make this defense since the president of the company was undoubtedly the proper party to apply to in order to have an endorsement on the policy covering the new location, and his declarations and acts, dispensing with the endorsement, and inducing the insured to act without it, were as binding on the company as if the terms of the policy had been strictly complied with.

It is manifest that the circumstances of the cited case differ materially from the facts before us. In the pending case the agents of the insurance companies said nothing and did nothing when they received the request to bind the new location, and the agent of the insured, although its request had been completely ignored, did nothing to ascertain whether

1. Pollock v. German Fire Ins. Co., 1901, 127 Mich. 460, 86 N.W. 1017; Bonacorso v. Camden Fire Ins. Ass'n, 1936, 130 Neb. 203, 264 N.W. 442; Cummings v. National Fire Ins. Co., 1930, 251 Mich. 105, 231 N.W. 61; Bergerson v. General Ins. Co. of America, 1941, 235 Mo.App. 806, 148 S.W.2d 812; Columbia Ins. Co. v. King, 5 Cir., 1929, 30 F.2d 887; Kerr v. National Fire Ins. Co. of Hartford, Conn., 1935, 141 Kan. 393, 41 P.2d 726; State Farm Fire Ins. Co. v. Rakes, 1948, 188 Va. 239, 49 S.E.2d 265, 4 A.L.R.2d 862; Williamsburg City Ins. Co. v. Cary, 1876, 83 Ill. 453; Luthy v. Northwestern National Ins. Co., 1928, 224 Mo.App. 371, 20 S.W.2d 299; Alexander v. General Ins. Co. of America, D.C.Cal.1938, 22 F. Supp. 157 (dictum). In each of these cases but two, Cummings v. National Fire Ins. Co. and Kerr v. National Fire Ins. Co., there were circumstances, in addition to the failure of the insurance company to cancel its policy and return the unearned premiums, which supported the ruling that the insurance company was estopped to deny liability.

or not the binder had been effective. There was no affirmative statement or promise on the part of the insurers and the contention that they are estopped to deny liability rests entirely on their complete silence and inaction. In short, the plaintiff's argument is that the silence of the insurance companies gave consent to a change in the contracts.

Nor do we think that the precise question was settled by the later decision of the Court of Appeals of Maryland in National Union Fire Ins. Co. v. Menke, 166 Md. 513, 171 A. 719, 720, on which the defendant chiefly relies. In that case the plaintiff obtained a fire policy on his dwelling and its contents, which provided that the policy should be void "while the insured shall have any other contract of insurance, whether valid or not, upon such property, not permitted in writing hereon." The policy also contained the provision that no agent of the company should have the power to waive any provision of the policy except by agreement endorsed thereon. Subsequently the policyholder obtained additional insurance from another insurance company and later the property was destroyed by fire. The original company, when sued, defended on the ground that the clause as to other insurance had been violated. In response the policyholder proved that the additional policies had been issued at the request of the agent of the original company and the trial court held that this conduct constituted a waiver of the policy provisions. The Court of Appeals, however, reversed and found for the defendant company on the ground that the knowledge of the company's agent of the issuance of the new policies did not affect the binding force of the provisions of the previously issued policy.

Closer than either of the two cases upon which the parties rely is Harp v. Grangers' Mutual Fire Ins. Co. of Fred'k County, 49 Md. 307, where the precise point was presented to the Court of Appeals of Maryland but not decided since the court found it unnecessary to do so. In that case application was made by a property owner to the insurance company for a fire insurance policy on August 7, 1876, but it was not acted on prior to the destruction of the house by fire on August 30. Thereafter the application was rejected. In support of the action, the policyholder contended that it was the duty of the company either to have accepted or rejected the application within a reasonable time, and since it failed to do so and the property owner suffered a loss in consequence of such negligence, the law would imply an acceptance of the application and hold the company liable for the loss. The Court held that it could not be said, under these circumstances, that the company failed to act within a reasonable time or that its conduct was calculated to mislead the plaintiff. The Court said (page 309):

"How far and under what circumstances an acceptance of an application for insurance may be implied from the neglect of a company to act upon it within a reasonable time, is a question not necessary to be decided in this case, for conceding the law to be as contended for by the appellant, without meaning however so to decide, the record fails to show any such negligence on the part of the company as to entitle the plaintiff to recover."

So here we deem it unnecessary to decide the question in the absence of any pronouncement by the Court of Appeals of Maryland. The conduct of the insured does not justify a recovery even though it be the law of Maryland that an insurance company must reject an application for insurance within a reasonable time or its acceptance will be implied and it will be held liable for an ensuing loss. It is to be noted that while Oriole advised its agent, Green, of its purpose to move out of the old location and into the new, the memorandum from Green to Danaher, the agent of the companies, merely said "Please bind new location" without indicating that the insurance on the old location was to be terminated. Moreover, the insured after having sent the memorandum received no reply or acknowledgment of any kind but, never-

theless, remained completely inactive for a period of eight months prior to the fire. Under these circumstances we do not think that the insured was justified in persisting for so long a time in the assumption that the insurance companies had consented to the coverage of the goods in the new location. It follows that the insured is not entitled to recovery and the judgment of the District Court will be affirmed.

Affirmed.