No. 43,991

RAY S. WALKER, *Appellant,* v. FLEMING MOTOR COMPANY, INC., *Appellee.*

(404 P. 2d 929)

Opinion filed August 17, 1965.

*Evart Mills,* of McPherson, argued the cause, and *Michael T. Mills,* of McPherson, was with him on the brief for appellant.

*James P. Mize,* of Salina, argued the cause, and *C. L. Clark, Tom Lillard, Jr.,* and *James T. Graves,* all of Salina, were with him on the brief for appellee.

The following opinion was prepared by MR. JUSTICE ROBB and approved by the court during his lifetime:

This is an appeal from the trial court's following orders and judgments,

1. The order setting aside the general verdict in the first case for $3,800.00 in plaintiff's favor and the jury's answers to special questions and granting defendant a new trial;

2. The order denying permission to plaintiff to file his second amended petition including $7,500.00 exemplary and punitive damages and ruling that plaintiff might file the amended petition if he made no claim for exemplary and punitive damages;

3. The order overruling and denying plaintiff's motion to conform the pleadings to the evidence and include the $7,500.00 exemplary and punitive damages;

4. Accepting and adopting the second jury's verdict of $989.00 for plaintiff and entering judgment for that amount; and

5. The order overruling plaintiff's motion for new trial in the second case;

all being entered in an action to recover damages resulting from alleged fraud and deceit in the sale of a purported 1959 Diamond-T truck by defendant to plaintiff.

There have been two jury trials. The first trial resulted in a $3,800.00 verdict. This verdict was set aside and a new trial granted by the trial court's order. On retrial, a verdict and judgment was entered for $989.00.

In April 1961, the defendant sold plaintiff a used 1959 Diamond-T truck or tractor for $10,000.00, of which $7,000.00 was paid in cash, and the balance paid by a trade-in of plaintiff's 1957 truck. It developed, however, that the engine, transmission and differential were not parts of that or any 1959 Diamond-T truck, nor were they even of 1959 vintage. They had been taken from a 1950 model White truck which the defendant had repossessed in 1957, and were comingled by the defendant with body parts of the 1959 Diamond-T in rebuilding or reconstructing the previously wrecked truck sold to plaintiff. A certificate of title was then obtained for the finished product as a 1959 Diamond-T tractor, and this certificate was assigned to the plaintiff at the time of his purchase.

The first jury found that plaintiff "was deceived by the defendant as to the truck he purchased," while at the second trial, the jury found that the defendant had "knowingly concealed . . . material facts for the purpose of deceiving or cheating" the plaintiff.

The case was originally tried in January, 1963, and resulted in a verdict in plaintiff's favor. On February 4, 1963, the trial court set this verdict aside and granted a new trial. In March 1963, the plaintiff filed a motion for leave to file his second amended petition containing, for the first time, a separate count for exemplary damages. This motion was overruled for the reasons that plaintiff's first two petitions had not contained such allegation, that his claim was substantially changed thereby, and that it conformed neither to the facts proved in the first trial nor to those which plaintiff indicated he would present at the subsequent trial.

The trial court did, however, permit plaintiff to file a third amended petition spelling out in some detail the facts which he alleged the defendant had knowingly concealed from him for the purpose of deceiving and cheating him, and to induce him to purchase the truck.

The case proceeded to a second trial wherein the plaintiff moved to amend his pleadings to conform to the evidence by adding allegations that, because of defendant's willful and intentional deception plaintiff was entitled to exemplary damages of $7,500.00. This motion was overruled.

As a general rule, amendments to pleadings are favored in law and should be allowed liberally in the furtherance of justice to the end that every case may be presented on its real facts and determined on its merits. (41 Am. Jur., Pleading, § 291, p. 490.) This principle has been followed in Kansas under both the old and the new codes of civil procedure. In *Woods v. Nicholas,* 92 Kan. 258, 140 Pac. 862, it was held:

"Amendments for the purpose of correcting mistakes or defects in pleadings that would promote justice and not substantially change the claims or defenses of parties should be liberally allowed." (Syl. ¶ 1.)

Motions for leave to amend are addressed to the sound discretion of the court, but its discretion is not to be exercised arbitrarily or used to defeat the ends of justice. (41 Am. Jur., Pleading, § 293, p. 491.) In *Rockey v. Runft,* 191 Kan. 117, 379 P. 2d 285, we said:

"The power of discretion conferred by the provisions of G. S. 1949, 60-759, upon the trial court, is not an absolute or an arbitrary power, but a power of judicial discretion. Such discretionary power is granted under the statute in the furtherance of justice relative to the substantive rights of the parties, and not to impede justice with respect to such rights. . . ." (p. 126.)

Under the circumstances of this case, we believe the trial court erred in refusing to permit plaintiff to file his second amended petition asserting a claim for punitive damages. The addition of such a claim would not, in our judgment, substantially change the cause of action. In *Foster v. Humburg,* 180 Kan. 64, 299 P. 2d 46, it is pointed out:

"While allegations of damages are essential in a petition, they do not constitute the 'cause of action.' The 'cause of action' is the wrong done, not the measure of compensation for it, or the character of relief sought. A 'cause of action' arises from a manifestation of a right or violation of an obligation or duty. . . . Damage is not the cause of action. It is merely a part of the remedy which the law allows for the injury resulting from a breach or wrong . . ." (p. 67.)

The Foster case was cited with approval in *Jefferson v. Clark,* 190 Kan. 520, 376 P. 2d 923, wherein this court said:

"Plaintiff argues strongly that the trial court committed error in not allowing him to amend his petition to add the cost for the damages to his automobile. We feel that the court erred in that decision. The case of *Foster v. Humburg,* 180 Kan. 64, 299 P. 2d 46, appears to be almost a 'bay horse' case on the point. There is no change of cause of action in the profered amendment. . . ." (p. 524.)

Plaintiff's lawsuit, from its inception, was based on one of the worst kind of admitted frauds. The amended petition on which the

case was first tried alleged that the defendant had made false representations, intending that plaintiff rely thereon, which he did to his damage, and that fraud was thereby perpetrated upon the plaintiff. Evidence was introduced at the first trial which justified the jury in finding that plaintiff had been deceived by the defendant.

In *Watkins v. Layton*, 182 Kan. 702, 324 P. 2d 130, the court said:

"The earliest Kansas cases indicate that damages, sometimes called exemplary, vindictive or punitive, are permitted whenever the elements of fraud, malice, gross negligence, or oppression mingle in the controversy. (*Malone v. Murphy*, 2 Kan. 250; *Albert Wiley v. Keokuk*, 6 Kan. 94; and *Cady v. Case*, 45 Kan. 733, 26 Pac. 448.) Such damages are allowed not because of any special merit in the injured party's case, but are imposed by way of punishing the wrong-doer for malicious, vindictive or a willful and wanton invasion of the injured party's rights, the purpose being to restrain and deter others from the commission of like wrongs. . . ." (p. 705.)

See also *McWilliams v. Barnes*, 172 Kan. 701, 242 P. 2d 1063, in which a recovery on punitive damage was allowed because of affirmative concealment.

In view of the facts shown here, we are of the opinion plaintiff should have been permitted to file his second amended petition containing the claim for exemplary damages, even though his motion for leave to do so was not filed until after the first trial. No surprise would have been involved, for the transaction remained the same. Nor can it be said the defendant would not have had ample time to meet the issue, for the second trial was not held until nine months after plaintiff's motion to amend was overruled. We conclude that, in overruling plaintiff's motion for leave to file his second amended petition, the trial court erred.

We believe that the plaintiff's position on the admission of evidence relating to damages likewise has merit and requires our consideration.

The questions arise in this fashion: witnesses for the plaintiff testified that when the truck was sold to plaintiff in April 1961, it had a market value of from $3,000.00 to $3,500.00. On the other hand, defense witnesses stated that the truck had no established market value as of that time, but was worth whatever could be gotten for it. Premised on the defendant's theory that the truck possessed no market value, the trial court admitted evidence showing how far the truck had traveled after its purchase and the gross revenue produced, but refused to admit rebuttal evidence offered by plaintiff to show net revenues, truck expenses and the trade-in

value of the truck after nine months of operation. Plaintiff attacks these rulings as erroneous.

The general rule, sustained by the great weight of authority, is that where a purchaser has been defrauded by false representations as to the quality, value or condition of the property he buys, he may recover as damages the difference between the actual value of the property at the time of sale and the value it would have had if the representations had been true. (24 Am. Jur., Fraud and Deceit, § 227, p. 55; 37 C. J. S., Fraud, § 143, p. 477 et seq.) In common legal parlance, this is known as the "benefit of the bargain" rule and is followed in Kansas. In *Epp v. Hinton*, 91 Kan. 513, 138 Pac. 576, an action arising out of misrepresentation in the sale of land, the court said:

"The court adopted as the measure of damages the difference between what the property conveyed to the plaintiff was actually worth and what it would have been worth if it had been as represented. This is in accordance with the weight of authority. . . ." (p. 516.)

Our most recent case on this subject, *Perry v. Schoonover Motors*, 189 Kan. 608, 371 P. 2d 152, involved the sale of a used automobile, represented as new, where the purchase price was paid in part by a trade-in allowance. In this case, we said:

"It may therefore be said, in a damage action by a purchaser for fraud inducing the purchase, the measure of damages is the difference between the real value of the property and the value which it would have had if the representations had been true. This measure of damages applies without regard to the price paid, and, in the case of an exchange, without regard to the value of the property given in exchange by the party defrauded, although the price paid may properly be submitted to the jury as a fact to aid them in the assessment of damages. (37 C. J. S., Fraud, § 143, pp. 475, 477, 478.)" (p. 613.)

See also *Van Natta v. Synder*, 98 Kan. 102, 104, 157 Pac. 432, and *Cramer v. Overfield*, 115 Kan. 580, 581, 223 Pac. 1100, 57 A. L. R. 1147 note.)

The real value or actual worth of property is established by evidence of its market value, unless the property has no established market value, in which case resort may be had to other evidence relating to matters which a reasonable buyer or seller would consider in concluding a contract of sale. (31A C. J. S., Evidence, § 183 [1], pp. 476-7.) Long ago this court spoke decisively on this point in *St. L. K. & A. Rly. Co. v. Chapman*, 38 Kan. 307, 16 Pac. 695, where it was said:

". . . Where property has a market value the rule is strict, and requires only that value to be shown; but where it is shown that the property is without a market value, then the law allows the next best evidence to be given to ascertain its value . . ." (p. 309.)

In the later case of *Kerr v. National Fire Ins. Co.*, 141 Kan. 393, 41 P. 2d 726, we held:

"Where personal property covered by an insurance policy had no market value, its real value, for the purpose of establishing amount of loss under the policy, may be determined from such data as is available, and cost, use and condition are proper elements for consideration." (Syl. ¶ 2.)

See also *Kennedy v. Heat and Power Co.*, 103 Kan. 651, 175 Pac. 977; *Geselle v. American Home Fire Assur. Co.*, 146 Kan. 138, 68 P. 2d 1097.

The rule we have enunciated accords with the general rule stated in 20 Am. Jur., Evidence, § 372, p. 339:

"Where personal property is without market value, then the law allows the next best evidence to be given to ascertain its value. In such cases, evidence as to cost and other considerations which may affect value or which tend to show its worth, actual, real or intrinsic, is admissible. . . ."

In the present case, the defendant contends that the truck had no market value when it was sold to the plaintiff, and his witnesses so testified. Even though this evidence was disputed by the plaintiff, whose witnesses ascribed a market value to the truck, we believe the defendant would be entitled to present evidence, under proper instructions, on his theory of value: *provided, however, that such evidence be relevant and that it be made subject to proper rebuttal.* Thus, we come to the crux of the evidentiary questions presented.

As to gross income, it seems clear to us that there is no plausible relationship between the actual value of the truck at the time the plaintiff bought it and what the plaintiff may have grossed from it thereafter. For this reason alone, we believe that it was error to admit evidence of the gross income derived from the truck after its purchase.

Furthermore, under the "benefit of the bargain" rule, recovery of damages is not dependent on whether or not the use of property which was misrepresented has proven profitable. A defrauded vendee is entitled to compensation for the contract he thought he was making and any advantage he would have obtained thereunder. (24 Am. Jur., Fraud and Deceit, § 227, p. 56.) Accordingly, evidence of income, whether it be gross or net, is irrelevant and not admissible.

A somewhat different problem is posed by the admission of evidence showing the distance traveled by the truck subsequent to plaintiff's acquisition thereof. While this evidence may have had some bearing on the usability and worth of the vehicle when sold, we believe plaintiff should have been given the chance to rebut it. Evidence relating to such matters as the truck's performance while plaintiff used it, the extent of repairs and cost thereof, and the condition and value of the truck at the conclusion of plaintiff's operation, would seem essential to a proper evaluation of the mileage figure, and it was, therefore, error for the court to exclude it.

Other errors are alleged by plaintiff, but in view of the decision we have already reached, we believe they require no discussion at this time.

In conclusion, we believe that a new trial should be granted as to all issues even though the plaintiff seeks to have it limited to the question of damages only. Especially, do we feel that fairness requires a new trial generally, since punitive damages will become an issue for the first time.

The judgment is reversed with instructions that a new trial be granted generally.