No. 32,432

G. E. STALKER, *Appellee*, v. W. E. DeWITT, *Appellant.*

(51 P. 2d 1012)

Opinion filed December 7, 1935.

*J. L. Stryker,* of Fredonia, *John M. Goldesberry, Gerald B. Klein* and *James Goldesberry,* all of Tulsa, Okla., for the appellant.

*T. D. Hampson, Jr.,* and *W. H. Edmundson,* both of Fredonia, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This is an appeal by the defendant from a judgment in favor of the plaintiff in an action involving the proper division between plaintiff and defendant of the profits derived from the construction of a school building at Fredonia, the plaintiff claiming to have been entitled to an equal share of the profits after the first $1,600, and the defendant claiming 75 percent as against 25 percent for the plaintiff as to all the profit, including the first $1,600. There

is no dispute as to the amount of profit nor as to division of the first $1,600 thereof, of which it is agreed the plaintiff was to receive $400, or 25 percent, and the defendant, $1,200, or 75 percent.

The amended petition alleges the formation of a partnership between the plaintiff and defendant by oral contract for the construction of buildings, the profits and losses to be shared equally between the two parties, and that immediately prior to the filing of their bid with the board of education for the erection of this Fredonia school building, the defendant insisted upon a modification of the oral contract as to equal profits so that as to the first $1,600 of profit, which they had figured on making on the contract, he should receive $1,200 and plaintiff only $400, and that plaintiff agreed thereto.

The answer is a general denial and a specific denial of any oral agreement as to the equal sharing of profits and a denial of any partnership .between these parties, but alleges there was an oral contract of joint adventure as to the construction of the Fredonia building by which defendant was to finance the construction, and plaintiff was to work on this particular building by the laying of brick and to supervise the laying of brick. The answer sets out the long experience of the defendant in such work and his financial ability necessary to furnish security and care for the payment of labor and material, as compared with the inexperience and lack of financial ability of the plaintiff.

There is no dispute as to the fact that the actual profit on the construction of the building was $7,302.45, instead of $1,600. There is in the evidence, but not in the pleadings, a reference to there being a definite project covered by the bid of about $29,000, and an alternate part which made the total construction cost nearly or about $42,000.

The case was tried to the court, and it made findings of fact and conclusions of law. The essential ones relating to the matters in controversy are the first, second and seventh findings of fact and the first conclusion of law, which are as follows:

"FINDINGS OF FACT

"1. The court finds that in the month of June, 1934, the plaintiff and defendant entered into a verbal contract by which the plaintiff was to endeavor to secure contracts and submit the propositions to the defendant, who would assist him if in his judgment the business would justify it, and that under such arrangement that they were to share equally in the profit and loss.

"2. The court. finds that the plaintiff in this case did learn of the letting of a contract in the city of Fredonia for school district .No. 40, and that he

and the defendant submitted a bid and were awarded such contract, and that by a verbal agreement just before the bid was submitted, it was agreed that the plaintiff was to have $400 and the defendant $1,200 out of the first $1,600 profit that was made, and that a profit of $7,302.45 was made on such contract, and that the plaintiff should have $400 of that amount and the defendant $1,200 and the balance should be equally divided."

"7. The court finds that the partnership should be dissolved, but in order to make a final settlement of the matter, the court will retain jurisdiction of the case and give the parties an opportunity to make a speedy adjustment if they can do so; if not, the court will take such further proceedings as may be necessary.

"CONCLUSIONS OF LAW

"1. The court concludes as a matter of law there was a partnership existing between plaintiff and defendant for the construction of the gymnasium for school district No. 40, and that out of the first $1,600 profit plaintiff was to have $400 and defendant $1,200 and the balance of the profits should be divided equally."

The omitted findings of fact concern accounts, bills and figures, and the second and third conclusions of law place the costs on the defendant and dissolve the partnership, retaining jurisdiction for any further or necessary order in that regard.

The journal entry, which follows the findings and conclusions, directs the clerk of the court, in whose custody the funds in dispute were held, to reserve $100 for the costs of the action and the remaining sum of $1,425.60 to be awarded to the plaintiff subject to the final outcome of any appeal.

Before the defendant filed his answer in the case he filed a motion to strike out paragraphs 15, 16 and 17 of the amended petition for the reason that they were irrelevant and redundant. The motion was overruled and the defendant excepted thereto. In the trial of the case the plaintiff introduced some evidence in support of those allegations and also of other similar matters not alleged in the amended petition over the objection of the defendant. Both these propositions are made the subject of assigned error and will be considered together.

The three paragraphs in the amended petition, asked to be stricken out, concerned the endeavors of the plaintiff to secure for himself and the defendant a contract for the construction of a $30,000 building in Joplin, Mo., and charged the failure to get the contract to the conduct of the defendant. The evidence introduced concerning this matter showed it occurred after the letting of the school contract at Fredonia, and there was also some evidence

introduced concerning attempts to secure another building contract at Fredonia and one at Parsons, all of which were subsequent to the school contract.

The theory upon which these three paragraphs were inserted in the amended petition was evidently to help show the existence of the partnership alleged, and the same can be said as to the introduction of evidence to show that this and other transactions were being considered or attempted to be handled by these parties pursuant to an alleged oral agreement of partnership made at Tulsa. Under the pleadings the burden was upon the plaintiff to prove a partnership, and any allegations or competent evidence tending toward that end were certainly relevant. The fact that the financial matters involved in this case are limited to the one contract, and these other matters occurred later than the letting of the Fredonia contract, will not prevent such circumstances tending to prove or disprove the making of an oral contract of partnership before the letting of the Fredonia contract.

The theory of the defendant is that whatever contract, if any there may have been made at Tulsa, was subsequently changed and modified before making the bid at Fredonia, but that is not admitted by the plaintiff either in the pleadings or in the trial. It is one of the issues in the case and not a conclusion on which allegations or proof can be excluded. Appellant cites the following from 13 C. J. 595:

"An agreement, when changed by the mutual consent of the parties, becomes a new agreement, which takes the place of the old, and consists of the new terms and as much of the old agreement as the parties have agreed shall remain unchanged; in other words, a contract may be abrogated in part and stand as to the residue."

This is very applicable, but the dispute is, How far was the Tulsa contract changed? If only in part, it still stands with the modified part as the contract.

As to the failure to strike out these three paragraphs it was said in *Sramek v. Sklenar*, 73 Kan. 450, 85 Pac. 566:

"Even if such facts are redundant and surplusage, and could be proved without being pleaded, it is within the discretion of the court to strike out or retain them." (Syl. ¶ 2.)

Appellant made the following admission during the trial:

"We will admit that they placed a bid on these two or three particular jobs that he has mentioned in the name of DeWitt & Stalker. They didn't receive the contract. If that is the purpose of it, we will admit they did put

the bids in as a firm and attempted to get two or three jobs, while this building was under construction and before it was completed."

This admission was immediately followed by a motion of the appellant to strike out all such evidence because such contracts were neither under the original agreement nor the second agreement. No allowance seems to be made by appellant for the possibility of the original contract being modified in part as to the Fredonia school contract. We think such is possible and plaintiff should have an opportunity to prove it, if he can, and therefore see no error in these two rulings of the trial court.

Appellant further objected to the introduction of evidence of the way and manner in which the contract with the board of education was signed, and the way and manner in which the subcontract and insurance company contracts were signed, and being improperly so used to prove a partnership. Appellant contends such evidence did not tend to establish a contract between the parties, which is necessary to form a partnership. The plaintiff was permitted, over the objection of the defendant, to testify that all such contracts were signed DeWitt & Stalker, and some of the contracts were offered in evidence when the following admission was made:

"We admit all the subcontracts there were, were signed DeWitt & Stalker, the same as the other contract. We admit there was a joint firm name of DeWitt & Stalker and the building was built under the name of DeWitt & Stalker, and they signed contracts under the name DeWitt & Stalker; all business carried on under the name DeWitt & Stalker."

It is said in 47 C. J. 725:

"Subject to the general rules as to the admissibility of evidence, when the issue of partnership is raised in a suit between business associates, evidence is admissible which tends to show that one of the parties was the sole proprietor of the business, while the other was a mere employee; . . . or their conduct of the business was such as to indicate that they were, or that they were not, partners." (See, also, the treatment of this subject on the two preceding pages.)

If this evidence tended to prove a partnership it was competent, as that was the principal issue involved in the case.

Serious objection was also made to plaintiff's evidence as to the part of the building work and supervision performed by each of these two parties. We fail to find any merit in this contention.

In connection with these matters it is reasoned and urged that the $1,600 profit on the building and its division took the place of the Tulsa contract, if there was such, treating the $1,600 as being

the whole of the profit contemplated or expected on the schoolhouse contract. This is a proper theory because there was evidence to that effect, but in such reasoning we must not forget there was evidence to the contrary, especially since this seems to be largely a fact case. The plaintiff in cross-examination said the $1,600 was not considered by them as probably or possibly all the profits they could make on the job, and on further cross-examination he explained that he did not include the wages they would each make by their own work in laying brick. The defendant in the closing part of his testimony explained the alternate part of the school contract and its relation to the estimates theretofore made.

The third proposition urged by the appellant, covering several assignments of error, concerns mainly the sufficiency of the evidence to sustain the findings as to the existence of an oral agreement of partnership made at Tulsa, it being subject to the laws of the state where made, and as far as the Fredonia transaction was concerned it could not come under the Tulsa agreement because the amount involved exceeded the limit there mentioned, and the distinction is further urged between a partnership and a joint adventure, purely speculative and contingent at the time of the alleged Tulsa agreement. Reference is made by appellant to many definitions and decisions, among which is *Wade v. Hornaday*, 92 Kan. 293, 140 Pac. 870, where it was held:

". . . A definition of partnership which is at once accurate, comprehensive and exclusive is extremely difficult. Participation in the profits is only regarded as a circumstance to be considered in determining whether or not a partnership existed. The mere fact that the parties called themselves partners and referred to their business relation as a partnership will not necessarily make them partners nor their business a partnership." (Syl. ¶ 1.)

Some of the other cases cited in this connection concern the evidence of partnership where third parties were concerned, and others show there can be a division of net commission which would not establish a partnership. In another case, *Beard v. Rowland*, 71 Kan. 873, 81 Pac. 188, it was held that profit sharing was not always an unfailing test of the existence of a partnership, but it was only one of the tests and may be controlled by other considerations. This does not make such evidence incompetent, but such as must be considered with other testimony.

A joint adventure is well defined and distinguished from a partnership in *National Bank v. Hoover*, 114 Kan. 394, 218 Pac. 1003,

and similar distinctions are made in citations from 47 C. J., which, according to the testimony of the defendant in this case, might make the transaction here involved a joint adventure, but the theory of a litigant cannot be held to necessarily apply where there is a conflict in essential parts of the testimony.

A good and well-recognized definition of a partnership is found in 47 C. J. 640, as follows:

"A contract of two or more competent persons, to place their money, effects, labor and skill, or some or all of them, in lawful commerce or business, and to divide the profit and bear the loss, in certain proportions."

The fourth proposition concerns the assignments of error in overruling defendant's demurrer to plaintiff's evidence, and in overruling defendant's motion to set aside the judgment and grant a new trial, urging that the judgment is contrary to law and there is insufficient evidence to support the findings. If the arrangement between these parties had been in writing and it contained no ambiguity, these arguments of appellant would be most effective, but there is a conflict in the testimony on all or nearly all of the essential features in the case, and it becomes largely a question of fact, and we find there was evidence on such disputed facts, which if believed, would support the conclusion of the trial court and justify the rulings on the demurrer and motions above enumerated. A pertinent distinction applicable to the case at bar is found in 20 R. C. L. 849, which is as follows:

"The question whether a partnership exists between particular persons is a mixed question of law and fact. Where there is no dispute as regards the facts the question is one of law for the court to determine. Hence, if the agreement under which a business arrangement is carried on, and which is claimed to be a partnership, is in writing, and free from ambiguity or doubt, its legal effect must be determined as a matter of law. If an attempt to establish a partnership wholly fails through lack of evidence, the court may properly decide as a matter of law that no partnership exists. But the existence of a partnership is also a question of fact, and it is the province of the jury to decide whether those facts exist which show that a partnership has been formed."

The judgment is affirmed.