No. 46,521

Jack Beverly and Maybelle Beverly, *Appellees*, v. E. R. McCullick, H. Irvin Christiansen, Edward B. Tolle, Joe Clemence, Salina Livestock Commission Co., Inc., Lawrence Clemence, Robert D. Muir, Edward T. Tolle, Merrill Christiansen and The Farmers and Ranchers Livestock Commission Co., Inc., *Appellants*.

(505 P. 2d 624)

Opinion filed January 20, 1973.

*Marvin E. Thompson*, of Russell, argued the cause, and *Clifford R. Holland, Jr.*, and *Mark Arthur, Jr.*, also of Russell, and *John V. O'Donnell*, of Ellsworth,

were with him on the brief for the appellants E. R. McCullick, H. Irvin Christiansen, Edward B. Tolle, Joe Clemence, and Salina Livestock Commission Co., Inc.

*Evart Mills,* of Mills & Mills, of McPherson, argued the cause, and *Michael T. Mills,* and *William S. Mills,* of the same firm, were with him on the brief for the appellants Lawrence Clemence, Robert D. Muir, Edward T. Tolle, Merrill Christiansen, and The Farmers and Ranchers Livestock Commission Co., Inc.

*Frank C. Norton,* of Salina, argued the cause, and was on the brief for the appellees.

The opinion of the court was delivered by

OWSLEY, J.: This is an action for damages against two groups of defendants, those associated with the Salina Livestock Commission Company and those associated with the Farmers and Ranchers Livestock Commission Company. The Salina Livestock group operated plaintiffs' livestock auction facility under an agreement which prohibited the parties from engaging in a competitive business. Plaintiffs claim the Salina Livestock group breached the agreement and that the Farmers and Ranchers group fraudulently conspired with them not only to cause the breach but to ruin and destroy plaintiffs' property as a livestock auction facility. Trial was to the court resulting in a judgment for actual damages of $250,000 and for punitive damages of $100,000. On appeal the basic claim of each group of defendants is the insufficiency of the evidence to support the judgment.

The Salina Livestock group are defendants E. R. McCullick, Edward B. Tolle, H. Irvin Christiansen, and Joe Clemence. The Farmers and Ranchers group are defendants Robert D. Muir, Edward T. Tolle, Merrill Christiansen, and Lawrence Clemence.

Because of the similarity of names, and close business and family ties among the defendants of both groups, we find it necessary to set forth the relationship at some length. Each individual defendant has a relative who is also a defendant and owner in the other livestock commission company. Joe Clemence and Lawrence Clemence are son and father, and partners in a farming operation of over 3,000 acres and a livestock feed yard containing approximately 5,000 head of cattle. H. Irvin Christiansen and Merrill Christiansen are brothers. They live within one and one-half miles of each other and together own 1,120 acres of grassland and cattle. E. R. McCullick and Robert D. Muir are stepfather and stepson. Muir lives with his mother and stepfather, and McCullick and Muir

are equal partners in M & M Cattle Company. Edward B. Tolle and Edward T. Tolle are father and son. Edward T. Tolle, hereinafter referred to as Thayne Tolle, is a music teacher in Wichita. Further analysis and detail of the business relationships of the Salina Livestock group and the Farmers and Ranchers group will be made later to provide an understanding of the factual situation.

Plaintiffs constructed the Beverly livestock auction facility in 1934. It is located on eighty acres adjoining the city of Salina on the east and consists of modern livestock pens, feed storage and feeding facilities, and sanitary sewers, plus the main sale building. The facility is as large and well-equipped as any livestock auction facility in Kansas.

In 1956, Joe Clemence, Edward B. Tolle, and E. R. McCullick began construction of another livestock auction facility on the west side of Salina, to be called Farmers and Ranchers. They drilled wells, completed the foundation and began brick work, then stopped the project, deciding instead to lease the existing Beverly facility. From 1956 until 1961 the Beverly facility was leased to Joe Clemence and another, and operated by Lawrence Clemence, E. R. McCullick, Edward B. Tolle, and H. Irvin Christiansen as the Clemence-Morrison Company. Beverlys were paid annual rent of $17,250.

In 1961 half the Beverly facility was leased to E. R. McCullick, Edward B. Tolle, and H. Irvin Christiansen. Beverlys leased the other half to themselves and entered into an agreement with the other lessees, providing for the joint operation of the facility. Beverlys then assigned their interest in both the lease and the operating agreement to Joe Clemence. The assignment reserved all the managerial prerogatives of Beverlys in the event of disputes between lessees. The operation was called Salina Livestock Commission Company.

Notwithstanding the lease and contract agreement to the contrary, Lawrence Clemence was shown as principal along with the lessees. For this and other reasons, Beverlys assumed their dealings with Joe Clemence included Lawrence Clemence at all times.

The tariff charged by the Salina Livestock Commission Company was changed and the operation was profitable. During the lease period from 1961 to 1964 the head count of livestock and net profits were:

| 1961 | ................. | 77,828 | $74,571.73 |
|------|------------------|--------|-----------|
| 1962 | ................. | 84,315 | 107,472.48 |
| 1963 | ................. | 87,633 | 90,392.11 |
| 1964 | ................. | 94,549 | 83,987.13 |

(Sales were conducted two days a week on Monday and Friday.)

In 1964 a new 5-year lease was negotiated with E. R. McCullick, H. Irvin Christiansen, and Edward B. Tolle. Because of increasing costs and taxes Beverlys increased the rent to $20,000 per year, and again leased half to themselves. The parties to the lease again signed an operating agreement setting forth the obligations and responsibilities of the parties. The operating agreement specifically provided:

"3. *AGREEMENT:*

"In consideration of the mutual advantages to be had by the parties hereto, they agree to associate themselves together for the purpose of engaging in the sale of livestock on commission under the terms, conditions and provisions hereof.

"4. *NAME:*

"The name of the operation shall be the SALINA LIVESTOCK COMMISSION COMPANY, hereinafter referred to as 'Commission'; and Jack Beverly, for advertising and good will, shall be the General Manager.

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"6. *WORKING CAPITAL:*

"The Company and Beverly shall, on or before November 1, 1964, advance Ten Thousand Dollars ($10,000.00) each unto the fiscal agent as working capital. The Company and Beverly shall advance, from time to time, in equal proportions, such additional working capital as may be needed.

"7. *PROFITS IN ABSENCE OF ELECTION:*

"Unless Beverly or the Company electes to prorate net profits under Paragraph '3' hereof, the net profits and losses of Commission shall be borne and shared, as follows:

"Beverly 50%

"Company 50%, which is to be equally divided among its three (3) venturers.

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"10. *RENT TO BEVERLY NOT COMMISSION EXPENSE:*

"On determining net profits, rents to be paid Beverly as Lessor by the Company under said Lease shall not be deducted as an expense of Commission.

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"15. *NET PROFITS:*

"Except as herein otherwise provided, all of the direct, actual, customary, reasonable bonafide expense of Commission shall be deducted from gross receipts in determining the net profit or losses of Commission. No participant is to draw a salary or any off premises personal or travel expense, payable by Commission. No participant shall directly or indirectly enter into: (a) an engagement or arrangement that is competition to Commission; or (b) incur

any liability on Commission that is not a customary, prudent, reasonable, normal, bonafide and consistent with good faith prior standards. Customary and normal risks of the business shall be the liability of Commission.

*   *   *   *   *   *   *   *   *   *   *   *   *

"17. *DUTY:*
"The parties shall cooperate in advertising, promotion, employment of personnel, effecting maintenance, minimizing expenses, and operating an effective and efficient business.

*   *   *   *   *   *   *   *   *   *   *

"19. *BEVERLY INTEREST:*
"Beverly, subject to the procurement of the prior written consent of the Company, may " 'farm out' " from time to time, all or some part of his interest under the lease and this agreement."

By written assignment and the construction placed on the assignment by the conduct of the parties, Joe Clemence became a member of the Salina Livestock Commission Company representing the interest owned by Jack Beverly. In return for his participation he was to receive one-fourth the profits of the Company, the other one-fourth to be paid to the Beverlys. Salina Livestock Commission Company was then incorporated, but Beverlys were not stockholders, officers, or directors of the corporation, nor did they take an active role in operation of the business.

Trade advertisements and public listings of principals included Lawrence Clemence, although he was not a signatory to the lease, operating contract, or assignment. In 1965, Lawrence Clemence contacted Beverlys demanding they cancel the existing operating agreement and lease and return to the straight lease of 1956 or he was going to build another sale barn. Joe Clemence, Edward B. Tolle, and H. Irvin Christiansen were present at meetings where such demand was made and were tacitly represented in this demand by Lawrence Clemence. Although several discussions took place, no other agreement was reached.

Rent and partnership profit received by Beverlys from November 1, 1964, through April, 1966, totaled $6,223.03 in 1964 (November and December); $33,255.41 in 1965 (full year); and $15,270.24 for the first four months of 1966.

Lawrence Clemence finished constructing Farmers and Ranchers, the project abandoned in 1956. He secured a license for Farmers and Ranchers in 1965, listing Merrill Christiansen, brother of H. Irvin Christiansen of Salina Livestock, as manager. Farmers and Ranchers opened in June, 1966. The record owners were Lawrence Clemence, Merrill Christiansen, and Robert D. Muir, each owning

two-sevenths interest, and Thayne Tolle, owner of one-seventh interest.

At this point it is necessary to go into more detail concerning the business relationships existing between the Salina Livestock group and the Farmers and Ranchers group.

Robert D. Muir, owner of an interest in Farmers and Ranchers, is the stepson of E. R. McCullick. They are partners in M & M Cattle Company. The financial interests of the two are so closely intertwined as to be virtually indistinguishable. Beginning in 1961 or 1962, Muir "acted for" his ill stepfather as general manager and president of Salina Livestock until he went to Farmers and Ranchers. All of the income from Salina Livestock in the name of E. R. McCullick was paid to M & M Cattle Company and shared by McCullick and Muir until Salina Livestock closed in 1967. Muir used money from that company to purchase his interest in Farmers and Ranchers.

Robert D. Muir transferred from Salina Livestock to Farmers and Ranchers in 1965, even before it began operation. He drew plans and supervised construction of the yard and was also in charge of securing help. Various key employees of Salina Livestock, indeed, the "bulk of the help" as described by one defendant, transferred to Farmers and Ranchers. Mrs. Lawrence Clemence, who held the important job of making out custodial account checks and making certain the customers were satisfied with the accounting, worked at both Salina Livestock and Farmers and Ranchers while both operated sales on alternating days. John Carlin, office manager at Salina Livestock for many years, worked half time at both places. No salary increase was paid him but each company paid half his prior salary. Other Salina Livestock employees, including auctioneers, yard foreman, and fifty percent of the yard help went to work for Farmers and Ranchers at the request of Muir.

Merrill Christiansen borrowed money from his brother, H. Irvin Christiansen of Salina Livestock, to purchase his two-sevenths interest in Farmers and Ranchers. They had been partners in owning several other sale barn operations in other towns and they own grassland and cattle as partners.

Thayne Tolle is the son of Edward B. Tolle of Salina Livestock, and the owner of one-seventh interest in Farmers and Ranchers, an investment of approximately $30,000. He teaches music in the Wichita schools, has lived in Wichita since 1966, and has never

participated in the operation of Farmers and Ranchers or any other livestock auction business. He admits he was not competent to quote any cattle prices. Lawrence Clemence admits he did not need any partners in Farmers and Ranchers for mere financial reasons since he could have financed it all himself. Notwithstanding this and despite his inactive role, Thayne Tolle received his share of the profit from the operation in the same manner as the active, unsalaried owners.

The success of Farmers and Ranchers and the failure of Salina Livestock was almost immediate. Business was diverted from Salina Livestock to Farmers and Ranchers without protest from owners of Salina Livestock. The son-in-law of Edward B. Tolle sold his cattle in the fall of 1966 at Farmers and Ranchers on the advice of his father-in-law. He also told another prospective customer in September, 1966, to take his cattle to Farmers and Ranchers. Edward B. Tolle attended "quite a few" sales at Farmers and Ranchers. H. Irvin Christiansen sold $51,348.21 worth of his own cattle at Farmers and Ranchers in 1966. Joe Clemence attended almost every sale at Farmers and Ranchers, purchasing and selling cattle there after July 1, 1966. E. R. McCullick attended the sales almost every week. The situation was admitted by Joe Clemence as being "extremely confusing and a mystery to the general public."

The Monday sale at Salina Livestock was cancelled. In the words of Edward B. Tolle, things were "getting pretty bad" in December, 1966. Head count comparisons for Salina Livestock from the previous year are illustrative of the rapid decline of the business:

| Month | 1965 | 1966 |
|---|---|---|
| August | 7,554 | 4,421 |
| September | 9,958 | 4,496 |
| October | 15,622 | 8,351 |
| November | 14,271 | 3,882 |
| December | 8,940 | 1,748 |

Total sold August through December, 1965, was 56,345 head. Total sold August through December, 1966, was 22,898 head.

Beverlys observed the change in the business and the transfer of help. They complained to the president and general manager of Salina Livestock, E. R. McCullick. Beverlys received only half the monthly rent due from August through December, 1966. This suit was commenced December 16, 1966. Only half of one month's rent was paid to Beverlys in 1967. The head count comparisons

with the previous year continued to show a declining and nearly defunct business at Salina Livestock:

| Month | 1966 | 1967 |
|---|---|---|
| January | 8,645 | 351 |
| February | 8,361 | 140 |
| March | 9,846 | 265 |

Total sold January through March, 1966, was 26,352 head. Total sold January through March, 1967, was 756 head.

On March 20, 1967, E. R. McCullick, H. Irvin Christiansen, Edward B. Tolle and Joe Clemence sent written notice to Beverlys that they were vacating the Salina Livestock-Beverly premises and would not pay further rent or perform any of the "further terms of said contracts and operating agreement." As of March 31, 1967, Salina Livestock had $7,569.99 in its bank account and continued to pay John Carlin, then office manager of Farmers and Ranchers, half his salary from that account until the end of 1967.

After notice and vacation of the premises, Beverlys requested that Salina Livestock defendants transfer the license to them so they might attempt to operate the premises and mitigate damages, but this request was refused. Beverlys then requested a renewal of the Salina Livestock license be issued to them, but Salina Livestock defendants again blocked their re-entry into the auction business by requesting renewal in their own name. Salina Livestock defendants represented to the Kansas Livestock Sanitary Commissioner that the renewed license would be used by them to operate the Beverlys' premises from which they had already vacated and removed equipment, and had no intention of reviving. No renewal license was issued to either Beverlys or Salina Livestock owners. Beverlys then applied for a new license and at a hearing on that application on September 27, 1967, all named defendants except Thayne Tolle appeared with their attorneys to protest the application, giving as their reason that the Salina area could not support three livestock sale facilities. The license was subsequently issued to Beverlys on October 3, 1967, and Farmers and Ranchers owners appealed that order. The appeal was later dismissed and Beverlys re-opened their facility for business, operating it themselves. Because of the shifting of personnel, the manner of operation just prior to its closing under Salina Livestock owners, and the complete cessation of business for nine months, Beverlys were unable to generate enough operating revenue to pay the taxes and insurance, much less turn a profit.

The trial court made the following findings of fact and conclusions of law:

"FINDINGS OF FACT

"1. By virtue of the lease, the operating agreement, the memo, and the assignment, and [sic] [an] express partnership agreement existing [sic] [existed] between the Plaintiffs as nonmanagement partners and Defendants E. R. McCullick, H. Irvin Christiansen, Edward B. Tolle and Joe Clemence as active partners. Because of the finding concerning conspiracy as hereinafter contained, a finding as to the inclusion of Defendants Lawrence Clemence and Robert D. Muir in the partnership as direct parties is unnecessary.

"2. As a result of the relationship of the Defendants above named and the Plaintiffs, the Defendants as named had a fiduciary obligation and duty to the Plaintiffs in the nature of a trust.

"3. The named Defendants conspired together with the remaining individual Defendants, to deprive the Plaintiffs of the monetary benefits of the agreements creating the partnership and to so damage the premises of the Plaintiffs, which was made the subject of the lease, that they would be irreparably and permanently damaged. Such acts of the Defendants related to the following:

"a. Construction of a competing livestock auction company.

"b. Transfer of the employees from the Salina Livestock to Farmers and Ranchers.

"c. Sent business of Salina Livestock to Farmers and Ranchers.

"d. Conduct of the business of the Salina Livestock in such a way so as to make the same undesirable to the customers and potential customers and to transfer the customers to the new business.

"e. Refusal to transfer public livestock market license after abandonment of the premises.

"f. Delay the securing of a public livestock marketing license for the premises of the Plaintiffs for sufficient time so as to cause a complete loss of the business of the facilities of the Plaintiffs and to transfer the business to the new facilities of the Defendants.

"4. Plaintiffs suffered damages by loss of rents and other actual damages to the business of the Plaintiffs of $250,000.00.

"5. That the acts of the Defendants in causing the damages to the Plaintiffs as aforesaid were the result of a willful, intentional and malicious conspiracy by all of the individual Defendants for the purpose of damaging the Plaintiffs. The Plaintiffs should recover the sum of $100,000.00 as punitive damages as a result of the willful, intentional and malicious acts of the Defendants in causing the damages to the Plaintiffs.

"6. The evidence wholly fails to show that the agreements as aforesaid were fraudulently obtained by Plaintiffs.

"7. The counterclaims of the Defendant, Joe Clemence, have not been presented to the Court. No evidence was introduced on such claims. They are hence denied.

"CONCLUSIONS OF LAW

"1. A partnership both express and implied existed between the Plaintiffs

and Defendants E. R. McCullick, H. Irvin Christiansen, Edward B. Tolle and Joe Clemence.

"2. Defendants as named each had a legal duty to the Plaintiffs of the utmost fidelity and trust. The legal duty of such Defendants is especially stringent since they were managing the business, which duty was analogous to that of trustees.

"3. Plaintiffs may recover damages from the named Defendants for actual damages resulting from a breach of the duty of trust owed by such Defendants to the Plaintiffs.

"4. A conspiracy may be proved by evidence tending to show that two or more persons conspired to cheat and defraud others. The evidence shows that Defendants conspired together through a cooperative effort to cheat and defraud Plaintiffs.

"5. A conspiracy may be proved by circumstantial evidence.

"6. Each conspirator is liable for the acts of all co-conspirators.

"7. Punitive damages may be allowed to punish Defendants for their willful, intentional and malicious conduct in defrauding Plaintiffs. Such damages are the joint and several obligation of each Defendant as a party to the conspiracy."

We are bound by the familiar rule of this court that we cannot disturb the trial court's findings of fact if a search of the record reveals competent substantial evidence to support the findings. (*Huxol v. Nickell,* 205 Kan. 718, 473 P. 2d 90.) Defendants claim this rule is not applicable to the issue of the relationship of parties; that is, whether plaintiffs were the landlords of the Salina Livestock group or whether they were partners. The purpose of defendants claiming a landlord-tenant relationship is to avoid the fiduciary relationship of partners and limit the recovery to loss of rents. The basis of the contention is that the relationship of the parties depends on a construction of the written instruments involved; namely, the lease, the operating agreement, and the assignment, and is therefore a question of law.

Whether a partnership exists between particular persons is a mixed question of law and fact. If there is no dispute as to the facts the question is one of law for the court to determine. If the agreement under which a business arrangement is carried on, and which is claimed to be a partnership, is in writing, and free from ambiguity or doubt, its legal effect must be determined as a matter of law. If an attempt to establish a partnership wholly fails through lack of evidence, the court may properly decide as a matter of law that no partnership exists. The existence of a partnership is also a question of fact, and it is the province of the court in absence of a jury to

decide whether those facts exist which show that a partnership has been formed. (*Stalker v. DeWitt,* 142 Kan. 709, 51 P. 2d 1012.)

The trial court found a partnership existed between the Beverlys and each of the Salina Livestock group. The *Stalker* case approves the following definition of a partnership from 47 C. J. 640:

"'A contract of two or more competent persons, to place their money, effects, labor and skill, or some or all of them, in lawful commerce or business, and to divide the profit and bear the loss, in certain proportions.'" (p. 715.)

In *Potts v. Lux,* 161 Kan. 217, 166 P. 2d 694, we find a more comprehensive test as to the existence of a partnership:

"Numbered among the often approved tests to which we have referred are the following: Intention of parties to the contract; sharing in profits and losses; charging of losses against accumulated profits; community of control over management and direction of the business; active participation in management of the affairs of the enterprise; joint control and exercise of ownership over all or part of the business assets; participation in division of the net earnings; sharing in payment of expenses of operation; fixing of salaries by joint agreement; investment in the business of undistributed profits for the purpose of building up a substantial cash reserve; division of undistributed profits in the event of liquidation contingent upon repayment to one of the parties of cash originally invested in capital." (p. 222.)

Conceding defendants' argument that we should limit a determination of this issue to the written instruments, we are satisfied the trial court was correct. The operating agreement defined the relationship of the parties. It provided the parties would associate for the purpose of engaging in the sale of livestock on commission under the name of Salina Livestock Commission Company, with Jack Beverly to act as general manager for advertising and good will. The operating capital was to be advanced in equal proportions, as well as additional working capital if needed, with net profits and losses to be borne 50% by Beverly and 50% by the other participants. No salary was to be paid to any participant, but all bona fide expense of the commission was to be deducted to determine net profit or loss. The participants agreed not to enter into an engagement or arrangement which was, directly or indirectly, competition to the commission. The parties further agreed to cooperate in advertising, promotion, employment, effecting maintenance, minimizing expenses, and operating an effective and efficient business. Provision was also made to permit Beverlys to "farm out" all or some part of their interest in the lease and the agreement subject to the prior written consent of the company. The

defendants point out several provisions of the agreement and the assignment that are consistent with a landlord-tenant relationship and we concede they have merit. Our function, however, is to consider and give effect to the whole of the agreement and, having done so, we conclude that a partnership was created.

The defendants also contend the trial court erred in finding the Salina Livestock group conspired with the Farmers and Ranchers group to damage the plaintiffs. We are concerned with the sufficiency of the evidence to support the conclusion of conspiracy. Mere conspiracy is not actionable, but harmful consequence and damage resulting from conduct pursuant to conspiracy is actionable. (*Beneke v. Bankers Mortgage Co.*, 135 Kan. 444, 10 P. 2d 825.) The nature of proof in a conspiracy action is well stated in *Hutson v. Imperial Royalties Co.*, 135 Kan. 718, 13 P. 2d 298:

" 'The combination or conspiracy may be proved by evincing a concurrent knowledge and approbation in the persons conspiring, of each other's acts; and it is usually done by proof of the separate acts of several persons concentrating in the same purpose or particular object. . . . For the purpose of showing such connection, therefore, circumstantial evidence suffices. The plaintiff may either prove the conspiracy which renders the acts of the conspirators admissible in evidence, or he may prove the acts of the different persons, and thus prove the conspiracy.' (5 R. C. L. 1103, 1104.)" (p. 723.)

A further statement on nature of proof is found in *Rickel v. Cooperative Exchange.*, 113 Kan. 592, 215 Pac. 1015:

"It is well settled by the authorities that conspiracy, when charged either in a civil or a criminal case, may be proved by circumstantial evidence. It is proper to prove the charge by direct evidence, but as the direct evidence is ordinarily in the possession and control of the alleged conspirators, frequently the opposing party cannot obtain it. Hence, in actual practice, it is usually proved by circumstantial evidence, and where the charge is made its tendency is to open rather a wide field of inquiry." (p. 600.)

Considering the evidence in the light most favorable to the plaintiffs we find the trial court's conclusion that the defendants conspired to damage the plaintiffs is supported by the evidence.

The defendants contend the actual damages, if any, should be limited to loss of rents and profits during the term of the lease and the operating agreement. They argue the loss of rents and profits are the only damages that arise naturally from the breach of the contract and the only damages that could have been reasonably contemplated by the parties. This action is not limited to breach of contract. The trial court found each of the defendants was guilty of conspiracy. Conspiracy is a tort and all injuries and

losses that are the natural and probable results of the wrongful and tortious acts are recoverable. (*Foster v. Humburg,* 180 Kan. 64, 299 P. 2d 46.) Diminution of the value of plaintiffs' business facility, as well as the loss of rents and profits, were the natural and probable results of defendants' tortious acts. Although the Salina Livestock group are liable to plaintiffs as co-conspirators with the Farmers and Ranchers group, they also bear responsibility for breach of the partnership fiduciary relationship. The record contains sufficient evidence to support the trial court's finding of actual damages.

The defendants also seek review of the judgment for punitive damages. We have said that punitive damages are recoverable in cases characterized by malice, fraud, or willful and wanton disregard for the rights of others. (*Hess v. Jarboe,* 201 Kan. 705, 443 P. 2d 294.) The evidence disclosed acts of defendants sufficient to support an award of punitive damages. We will not review all the evidence supporting punitive damages, but the intention of the defendants is clearly demonstrated by their efforts to prevent plaintiffs from obtaining a license in order to keep plaintiffs' facility closed.

The judgment is affirmed.