No. 44,196

T. E. FORSTER, d/b/a Forster Manufacturing Co., *Appellee*, v. STEVEN FINK, d/b/a Steven Fink Grain Co., *Appellant*.

(407 P. 2d 523)

Opinion filed November 6, 1965.

J. A. *Dickinson*, of Topeka, argued the cause, and *Robert H. Cobean*, of Wellington, was with him on the brief for the appellant.

*George B. Powers*, of Wichita, argued the cause, and *Carl T. Smith, John F. Eberhardt, Stuart R. Carter, Robert C. Foulston, Malcolm Miller, Robert N. Partridge, Robert M. Siefkin, Richard C. Harris, Gerald Sawatzky, Donald L. Cordes, Robert L. Howard, Charles J. Woodin, Mikel L. Stout, Ronald K. Badger,* and *Benjamin C. Langel,* all of Wichita, and *Ford Harbaugh,* of Wellington, were with him on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: Defendant-cross petitioner appeals from an adverse judgment rendered in an action brought by plaintiff for monies due on contract, defendant's cross petition being one for damages for alleged breach of that contract.

The background of this controversy may be stated thus: Plaintiff

manufactures and installs elevator equipment; defendant purchased and commenced operating two elevator buildings at Milan, Kansas, about May 1, 1959. Desiring to enlarge his storage capacity substantially defendant arranged for construction of a new storage steel tank to be completed by June 1, 1959, which construction is not involved in this controversy. On May 18, 1959, plaintiff and defendant entered into a written contract whereby plaintiff undertook to furnish and install a twelve inch screw conveyor eighty-four feet long to extend from the headhouse of one of the old elevators to the top of the new steel tank, its purpose being to convey grain from the smaller to the much larger facility. The contract executed was on a printed form denominated "Purchase Agreement," with certain blanks filled in, salient parts of which were price, a description of component parts to be furnished by plaintiff with the notation, "No starter or elect. boxes," the further notation: "Installed except for wiring" and a provision stating "Delivery June 1, 1959." Rewiring of the elevator electrical system being necessary to handle the new equipment, defendant first attempted to get local third parties to do this but being unsuccessful, on May 28, 1965, entered into an oral contract with plaintiff for plaintiff to do the necessary electrical work. No time was expressly fixed for completion of this work. Plaintiff does not ordinarily do electrical work but accepted this under the circumstances with the understanding, according to plaintiff, that he would do the best he could.

In his petition plaintiff alleged execution of both contracts; that plaintiff furnished material and completed said work under the contracts, defendant thereby becoming indebted to him for $4,080.54, which defendant refused to pay, and plaintiff claimed judgment for that amount.

In his answer and cross-petition defendant admitted the execution of the written contract and the employment of plaintiff for additional labor and electrical material as alleged and further alleged that time was of the essence and that performance on the part of the plaintiff and installation of all equipment was promised by him by June 1, 1959; defendant further alleged the 1959 wheat harvest in the area of his elevator occurred primarily during the days of June 10 to June 15 but plaintiff failed to complete and deliver the installation to be made by him for use during said wheat harvest, by reason of which defendant was unable to receive and store grain which he otherwise could have, and his business reputation was damaged, all to his total damage of $28,852.96, for which he prayed judgment.

Plaintiff's reply and answer to defendant's answer and cross petition, filed under our former code of civil procedure, consisted of a general denial. With issues thus joined trial was had to the court without a jury in July, 1964, at the conclusion of which the following findings of fact were made:

"1. The Plaintiff was engaged in the business of manufacturing equipment for the operation of grain elevators in the year 1959 and during the month of May, 1959 the Defendant was engaged in the ownership and operation of a grain elevator at Milan, Kansas.

"2. On May 18th, 1959 an instrument in writing, designated as a purchase agreement, was entered into between the Plaintiff and Defendant whereby the Plaintiff was to furnish certain equipment in the construction of certain improvements at the west Milan grain elevator owned by the Defendant. This called for certain equipment manufactured by the Plaintiff, but provided for no electrical boxes or starters, and in said purchase agreement it was provided that delivery date of June 1, 1959 was set forth.

"3. On May 28, 1959 an oral agreement was entered into between Plaintiff and Defendant for the doing and furnishing of certain labor and materials in the construction of certain electrical improvements,—wiring and installation of other equipment which was essential to the operation of the machinery and equipment provided by the written contract. This oral contract for the electrical work provided no time for the doing of the work except to have it done, as the parties understood, as soon as possible and to the best of the ability of the workmen to get the job done.

"4. There was certain work also to be done on the building in the nature of carpentry and strengthening of the wooden structures in the elevator for the carrying of the equipment to be installed. The electrical contract had originally been negotiated with persons other than the Plaintiff which contract was terminated by the parties and was taken over by the Plaintiff and a contract made on May 28, 1959 between Plaintiff and Defendant for that work. Work on the electrical contract began on the date of May 28, 1959 through a checking of the required materials needed for the job by the superintendent of the Plaintiff, and other work was commenced on June 1, 1959 in the electrical and carpentry work.

"5. The work contracted by the Plaintiff in this action was subject to completion of the building of a storage tank which, according to the evidence, was completed on the 1st or 2nd day of June, 1959. On the 9th day of June, 1959 the conveyor provided for in the written contract was assembled and on June 18th it was installed, or placed in position. On June 20th, 1959 certain electrical equipment, including a starter for the conveyor motor was received and was on that date installed, and on the 21st day of June, 1959 the work was completed on the entire job.

"6. The Court finds that none of the work and material provided by the written contract could be operated, or could be used until the completion of the electrical work for there would be no power transmitted to the conveyor motor.

"7. The Court finds that by the oral contract for the electrical work no time was agreed upon for the completion of the work but it was to be done

to the best of the ability of the contractor who was on the job to do the work and furnish the materials.

"8. The Court further finds that any loss occasioned by the Defendant by reason of inability to handle grain during the 1959 wheat harvest was due to no lack of performance on the part of the Plaintiff in the execution of the oral contract, and that no liability arises by reason of any failure in the purchase agreement of the written contract as to the lack of certain electrical equipment, especially a starter, that prevented the placing of the equipment in operation.

"9. The Court finds that by the invoices of the Plaintiff the amount payable on the written contract totals $3185.00, and the amount payable on the oral contract on the electrical invoice is $998.14."

The trial court made general conclusions of law and rendered judgment for plaintiff in accordance with these findings. Thereafter defendant filed his motion for new trial, which was overruled. Defendant appeals from these adverse orders.

Defendant specifies several trial errors but they all relate to the general contention that the trial court erred in receiving plaintiff's evidence of an affirmative defense to defendant's cross petition, when plaintiff pleaded only a general denial thereto, and in considering such evidence in rendering its judgment. Defendant refers to certain testimony concerning a motor starter and switch. To better understand this contention it is necessary to go into the evidence. Plaintiff's evidence showed that after the execution of the written contract and the subsequent oral agreement, necessary work on the storage tank was not completed until the first or second day of June, 1959 and work on the tank had to be completed prior to work on the conveyor; that immediately after entering into the oral contract of May 28, 1959, he had ordered certain electrical equipment including a starter for the conveyor motor but that this starter was not received until June 20, 1959, and therefore it was not installed and the job was not finally completed until the next day, June 21, 1959, which was after the 1959 wheat harvest, said harvest having been completed at the earliest time on record; the conveyor equipment covered by the written contract could not be operated without the electrical equipment, including the starter, being installed. It should be stated the evidence did indicate certain conveyor parts and the crane necessary to erect it were not at the elevator site by June 1, 1959, and until several days thereafter, twelve or thirteen days actual work being necessary to install the conveyor exclusive of the electrical work. Plaintiff further testified that defendant knew the missing electrical equipment was not there,

and that on June 13 while he was waiting on the electrical starter and a switch, he had a conversation with defendant in which it was conceded harvest was over and defendant said "take your time and get the job completed." In other words, defendant claims plaintiff should not have been permitted under his general denial in his reply to introduce evidence as to the missing electrical equipment as any reason for nonperformance of the contract, since this was in the nature of an affirmative defense, that of confession and avoidance, which must be specifically pleaded before evidence thereof can be received. Plaintiff refuses to concede that he relies on confession and avoidance, which assumes a breach of contract; rather he claims full performance of his contracts, both written and oral, contending that the only date fixed in the written contract referred to delivery of the equipment (which the trial court found) and there being no completion date specified in the subsequent oral contract, plaintiff had a reasonable time within which to perform it, and plaintiff denies there was any variance between his pleadings and proof.

Defendant raises these contentions for the first time in his motion for new trial, there having been no objection made to the evidence concerning the missing electrical equipment at the time it was received, or during or at the conclusion of the trial; there was no claim of variance made during the trial, there was no request for continuance at any time during the trial, and in fact no complaint of any kind by defendant until after judgment was rendered against him.

Under this state of the case it becomes unnecessary to determine whether or not there was any material variance between plaintiff's pleadings and proof and the effect thereof. It has long been the rule that any variance between pleading and proof is waived if the opposing party does not make timely objection. In *Woodard v. Timms*, 113 Kan. 413, 215 Pac. 456, it is stated:

"A variance between pleading and proof is waived when no objection thereto is clearly and specifically raised at the time the evidence is presented in the trial court." (Syl. ¶ 1.)

It has also been the rule that where parties submit evidence on issues that are not strictly presented in the pleadings without objecting to the variance and the trier of fact determines such issues the pleadings will be treated as amended. In *Blex v. Flack*, 121 Kan. 431, 247 Pac. 640, this court said:

"Where a pleading is defective in its allegations, and in the trial the parties submit evidence on an issue without objection and try it out as if it were fully pleaded, and the issue is submitted to and determined by the jury, the pleading will be treated as amended and the finding on the issue to be binding upon the parties." (Syl. ¶ 2.)

These rules have now become substantially embodied in our code of civil procedure (K. S. A. 60-215 [b], under which this case was tried, as follows:

"(b) *Amendments to conform to the evidence.* When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence."

A party impliedly consents to the introduction of issues not raised in the pleadings by his failure to make timely objection to the admission of evidence relating thereto (1A Barron and Holtzoff, Federal Practice and Procedure, Conforming to Evidence, § 449).

Thus we have this situation: Without objection the parties went to trial on certain disputed issues of fact. While there were others, mention of two will serve to illustrate: Defendant claimed that time was of the essence of the contract by necessary implication from the circumstances; plaintiff denied this. Defendant claimed the necessary wiring was all completed by June 4, 1959; plaintiff's evidence showed that certain equipment necessary for the wiring and the consequent operation of the conveyor did not actually arrive until June 20. 1959. Evidence pro and con was received by the court in a vigorously contested two day trial on these and other questions of fact, the case was submitted for determination and there was such determination on the merits. The court's findings were all substantiated by the evidence, and the judgment rendered necessarily followed.

Defendant's other claims of error relate to the court's refusal to order a new trial. In addition to what has already been discussed, defendant claimed surprise on the basis of the evidence concerning

the missing electrical equipment and its unavailability, and newly discovered evidence respecting availability of electrical equipment. It is difficult to see how defendant could claim surprise or that diligence is shown. The record reveals plaintiff's counsel in his opening statement at the beginning of the trial disclosed his position about the missing electrical equipment. As heretofore stated, no objection was made to this evidence or any issue raised based on surprise. The case proceeded to trial without any request for continuance or other relief.

In *Thompson Co. v. Foster*, 101 Kan. 14, 165 Pac. 841, plaintiff brought suit on a written contract. After an adverse judgment he claimed surprise when defendant introduced a letter purporting to modify the contract. No objection was made to the letter. This court said:

". . . in any event the plaintiff did not show such diligence as to entitle it to a new trial. The evidence regarding the contents of the letter went in without objection . . . No request was made for a continuance to enable the plaintiff to meet this evidence, and having taken its chances with the jury as the matter stood, without objection, it is not in a position to demand a further opportunity for a trial of the facts." (p. 17.)

In *Bank of Pleasanton v. Howard*, 131 Kan. 616, 293 Pac. 407, being a suit for money loaned, appellee offered evidence as to erasures appearing on a bank deposit slip. On the question of new trial the court said:

"The appellant contends that this testimony, coming as it did on the last day of the trial and without any warning and without having been sufficiently indicated in the reply of plaintiff, found him entirely unprepared to meet it; that he did not have time to obtain the services of an expert on questioned documents. On the hearing of the motion for a new trial appellant offered the affidavit of J. C. Shearman, of Wichita, an expert on questioned documents, and this affidavit stated that from a careful examination of the deposit slip the witness could say positively that there was no erasure or alteration in the figures on the slip.

"In view of the state of the pleadings it is apparent that this testimony could not reasonably have been anticipated. However, the defendant did not make any objection on the ground of accident or surprise, nor did he ask for a continuance on that ground. This being the case, this court feels its cannot sustain the contention of appellant." (p. 618.)

In *Wagon Co. v. Wilson*, 79 Kan. 633, 101 Pac. 4, we find this:

"One who submits a case tried without a jury, without asking opportunity to procure further testimony, is not in a position to ask as a matter of right a new trial on the ground that he was surprised by the evidence of the adverse party." (Syl. ¶ 4.)

Lastly, defendant complains that the trial court refused to hear evidence and to receive his affidavit submitted in connection with his motion for new trial. Offers of proof were made on the material in question and the record seems clear the court was fully aware of everything proffered and did in fact consider it, and we see no error in its ruling on the motion for new trial. The judgment of the trial court is affirmed.

APPROVED BY THE COURT.