(587 P.2d 911)
No. 48,850

LUELLA KISER, as Administrator C. T. A. of the Estate of Wayne F. Kiser a/k/a Wayne Frederick Kiser, and LUELLA KISER, *Appellees,* v. WILLIAM GILMORE, d/b/a GILMORE CATTLE COMPANY, *Appellant.*

Petition for reviewed denied February 5, 1979.

684

Opinion filed December 1, 1978. ■

*Charles K. Hyter*, of Branine, Chalfant, Hyter & Hill, of Hutchinson, for the appellant.

*Gaylord I. Maples*, of Maples & Egan, of Peabody, for the appellees.

Before ABBOTT, P.J., REES and SWINEHART, JJ.

SWINEHART, J.: The defendant appeals from a jury verdict awarding actual damages in the amount of $3,888.99 and punitive damages in the amount of $15,000 to the plaintiffs in an action arising out of the sale of cattle infected with brucellosis.

The plaintiffs are husband and wife. Mr. Kiser died soon after the conclusion of the trial in district court and his wife was substituted as administrator of his estate in the appeal.

In late 1973, the plaintiff, Mr. Kiser, decided to go into the dairy business. He was retired and in ill health at the time. He made arrangements with Mr. Gordon Gaede to go into partnership with him. The basic agreement was that Mr. Kiser would furnish the cattle and Mr. Gaede would furnish the labor. Mr. Kiser made arrangements for a bank loan which he used to purchase the dairy herd. Between December 1, 1973, and February 26, 1974, the plaintiffs made six different purchases of dairy cattle, totaling twenty-two cattle, from the defendant Mr. Gilmore. They also purchased two dairy cows from another seller.

On March 22, 1974, plaintiffs' entire dairy herd was quarantined for brucellosis. Brucellosis is a contagious disease in livestock. State law requires that any animal which is found to have

brucellosis must be slaughtered. K.S.A. 47-658b. In spite of small government subsidy payments to stockmen whose animals must be slaughtered, the discovery of brucellosis in a herd generally means financial hardship. It is especially serious for dairymen, for it is prohibited to sell milk from cattle possibly infected with the disease because it can cause a dangerous disease in humans—undulant fever.

The evidence presented at trial shows overwhelmingly that the disease originated in the defendant's herd. Mr. Kiser bought all of the cows except two from the defendant. The two that were purchased from the other source did not have the disease. A bull which the plaintiffs rented from a third party did have brucellosis. However, the bull's owner testified that none of his cattle had brucellosis, and that the bull was clean before being put with the plaintiffs' herd. An expert witness for the plaintiffs testified that bulls often catch brucellosis from cows but that cows very rarely are infected with brucellosis by a bull. The most significant evidence presented which tends to show the defendant's liability, however, is the fact that the defendant's entire herd was under quarantine at the time that he sold the animals. Under K.A.R. 9-2-23, animals under quarantine for brucellosis may not be sold, except for slaughter.

The defendant excuses the sale of the animals under quarantine by claiming that he erroneously believed that the quarantine had been released. Two quarantines were issued to the defendant in September of 1973 because of his failure to meet import requirements of the state of Kansas. Pursuant to K.A.R. 1977 Supp. 9-7-1 and 9-7-4, livestock imported into the state must be tested for brucellosis before being brought into the state. If they have not been tested or if they come from an area which has a particularly high incidence of brucellosis, the animals are segregated and quarantined inside the state and tested for the disease. The two quarantines issued to the defendant in September, 1973, were for failure to meet import requirements, not because of suspected brucellosis. On October 11, 1973, the defendant received a release of these two quarantines. However, on October 4, 1973, the defendant had received a quarantine for all of his cattle within the state of Kansas except steers and heifers less than six months old. This quarantine was issued because brucellosis had been discovered in his herd. It was not released until April 14, 1975.

Therefore, the defendant's sale of cattle to the plaintiffs during the period from December, 1973, until February 26, 1974, was in contravention of Kansas law which forbids the sale of animals quarantined for suspected brucellosis.

When the plaintiffs learned that a number of their dairy cattle would have to be slaughtered for brucellosis, they decided to abandon their faltering business venture. Kiser first went to the defendant asking him to repurchase the cattle for what they had paid for them, and to pay various incidental damages such as pasture rent, interest on the loan, etc. The defendant refused this settlement.

Mr. Gaede then offered to buy sixteen of the cattle from the plaintiffs. The defendant cosigned a bank note with Gaede to help him raise enough money to purchase sixteen of the cows. Mr. Kiser met with Mr. Gaede at a bank in April, 1974. The defendant was not present at the time the bill of sale was signed. At the trial he testified that he had no knowledge of what was contained in the bill of sale, and did not participate in the transaction in any way except to furnish money to Mr. Gaede.

In spite of the fact that the plaintiffs were able to dispose of sixteen of their cattle in this manner, they suffered some financial loss from the transactions. Accordingly, they filed suit against the defendant, alleging that the defendant had breached express warranties, implied warranties of merchantability and fitness for particular purpose; that the defendant had violated the Kansas Consumer Protection Act; and that the defendant had committed fraud.

The defendant's brief sets out five allegations of error. At oral argument, he abandoned his contention that the appeal should be dismissed because Mrs. Kiser is not a real party in interest as required by K.S.A. 60-217(a). The remaining allegations of error are: (1) that the trial court erred in instructing the jury on "willful, wanton and malicious" conduct because the plaintiffs' petition did not set forth such conduct as a potential ground for recovery; (2) that the trial court should have instructed on the defendant's theory of release; (3) that the trial court should have submitted written interrogatories to the jury; and (4) that the trial court should have granted a remittitur as to all or a part of the $15,000 punitive damages assessed against the defendant.

Briefly summarized, the jury was instructed that the plaintiffs

sought to recover damages on two alternate theories. One theory was that the defendant's acts constituted breach of warranty: an express warranty (K.S.A. 84-2-313), an implied warranty of merchantability (K.S.A. 84-2-314), or an implied warranty of fitness for a particular purpose (K.S.A. 84-2-315). The defendant does not challenge the propriety of this instruction, which explains the grounds upon which the plaintiffs' prayer for actual damages was based. The defendant's contention on appeal is that the trial court erred in instructing the jury that it could award punitive damages to the plaintiffs if it found that the plaintiffs were entitled to recover actual damages and if the jury found "that the conduct of the defendant was willful, wanton, malicious or constituted fraud." The defendant alleges that the use of the language "willful, wanton or malicious" was erroneous because the petition and the pretrial order only set forth fraud as grounds for recovery of punitive damages.

The defendant argues that fraud and willful, wanton and malicious conduct constitute two separate and distinct causes of action, and that it was therefore error to instruct on an issue not raised by the pleadings. In support of this contention, he cites *Simms v. Webb,* 219 Kan. 675, 676, 549 P.2d 570 (1976), where the Supreme Court said, "The instructions given must be germane to the issues raised by the pleadings, and must be limited to those issues supported by some evidence." He argues that the instructions were prejudicial to him because fraud must be proved by clear and convincing evidence (*Hoch v. Hoch,* 187 Kan. 730, 732, 359 P.2d 839 [1961]), but the award of punitive damages for willful, wanton and malicious conduct only entails proof that the parties' claim is more probably true than not true.

The plaintiffs' cause of action is primarily a contract action, alleging a breach of express warranties, implied warranties of merchantability and fitness for a particular purpose, and a violation of the Kansas Consumer Protection Act. The rule relating to the award of punitive damages in an action for breach of contract is stated in *Hess v. Jarboe,* 201 Kan. 705, 443 P.2d 294 (1968). The Supreme Court said:

"It is a well accepted general rule that an unjustified breach of a contract does not entitle a party to punitive damages. [Citations omitted.]

"An exception to this general rule is recognized when some independent tort or wrong results in additional injury which justifies the assessment of punitive damages by way of punishment of the wrongdoer. In such a case the proof of the

independent tort must indicate the presence of *malice, fraud or wanton disregard for the rights of others."* pp. 708-709. (Emphasis supplied.)

The defendant's claim that the court erred in instructing the jury on willful, wanton and malicious conduct is without merit. K.S.A. 60-215(*b*) provides:

"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence."

Judge Gard, discussing the purpose behind this portion of the Kansas Code of Civil Procedure, states:

"Since under these rules pleading is not an end in itself, and because the outcome of litigation should turn on the facts and not on the pleadings, amendments should be freely made to conform them to the evidence. Likewise, failure to amend does not affect the outcome on issues actually tried, whether they have been pleaded or not." Gard's Kansas C. Civ. Proc. § 60-215(*b*) (1963).

Kansas cases which discuss and apply 60-215(*b*) demonstrate the propriety of the court's instructions on willful, wanton and malicious conduct, in spite of the fact that it was not set forth as a ground for recovery in the petition or the pretrial order.

The evidence presented at trial clearly shows that the defendant either committed actual fraud or acted in willful, wanton and malicious disregard for the rights of the plaintiffs and the public at large. The plaintiffs, of course, alleged fraud in their petition. Actual fraud requires as an essential element the intent to deceive. *Loucks v. McCormick,* 198 Kan. 351, 356, 424 P.2d 555 (1967). The defendant at trial testified that he did not sell the quarantined cattle with the intent to deceive the plaintiffs. Accepting for the sake of argument the defendant's explanation of why he thought the final quarantine for suspected brucellosis had been released, his conduct is at the very least willful and wanton. Any seasoned stockman is aware of the seriousness of brucellosis, and failure to pay careful attention to notices relating to quaran-

tines for the disease would certainly support a factual finding that one who treated the matter so lightly had acted in a willful and wanton manner.

In *Forster v. Fink,* 195 Kan. 488, 407 P.2d 523 (1965), the Supreme Court considered the applicability of 60-215(*b*) to a situation where the plaintiff had filed a general denial to the defendant's cross-petition for breach of contract. At trial the plaintiff presented evidence, without objection by the defendant, tending to show confession and avoidance, an affirmative defense which must be specifically pleaded. The Supreme Court refused to find error, holding that the defendant had impliedly consented to the trial of the issue by not objecting to evidence relating to confession and avoidance, and that the pleadings should be treated as amended. The Court said, "A party impliedly consents to the introduction of issues not raised in the pleadings by his failure to make timely objection to the admission of evidence relating thereto." 195 Kan. at 493.

Another case which stands for the proposition that a party's failure to object to evidence tending to prove an issue not alleged in the pleading constitutes implied consent to trying that issue is *Schreppel v. Campbell Sixty-six Express, Inc.,* 201 Kan. 448, 441 P.2d 881 (1968). In the case at hand, not only did the defendant fail to object to the admission of evidence relating to willful, wanton and malicious conduct, he himself introduced much of that evidence. The situation is analogous to that presented in *Tripp v. The Reliable Life Insurance Co.,* 210 Kan. 33, 499 P.2d 1155 (1972). There the plaintiff did not allege estoppel in his pleadings, but both parties introduced evidence tending to prove estoppel. Applying K.S.A. 60-215(*b*), the Supreme Court found that no reversible error had occurred, despite the fact that the case was finally determined on the estoppel ground.

The defendant also argues that the fact that willful, wanton and malicious disregard for the plaintiffs' rights was not mentioned in the pretrial order should preclude instructing the jury on the issue. This argument is untenable in light of *Thompson v. Aetna Life Ins. Co.,* 201 Kan. 296, 440 P.2d 548 (1968), where the Supreme Court affirmed the decision of the trial court, even though acknowledging that the ultimate order of the court went beyond the literal scope of both the pleadings and the pretrial order.

The trial court's decision to submit the issue of willful, wanton and malicious conduct as a ground for awarding punitive damages fits within the scheme and purpose of our code of civil procedure as announced in *Walker v. Fleming Motor Co.,* 195 Kan. 328, 404 P.2d 929 (1965), where it was said:

"As a general rule, amendments to pleadings are favored in law and should be allowed liberally in the furtherance of justice to the end that every case may be presented on its real facts and determined on its merits. . . .

"Motions for leave to amend are addressed to the sound discretion of the court, but its discretion is not to be exercised arbitrarily or used to defeat the ends of justice." p. 330

Finally, we would note that the plaintiffs' failure to make an actual amendment of the pleadings is irrelevant. K.S.A. 60-215(*b*) specifically provides that "failure so to amend does not affect the result of the trial of these issues." Substantial justice was done by submitting to the jury the issue of whether punitive damages should be assessed against the defendant for willful, wanton and malicious disregard for the plaintiffs' rights. The instructions were supported by the evidence introduced at trial and they were relevant to the plaintiffs' plea for punitive damages.

The defendant's second allegation of error is that the court failed to instruct on his defense theory of release. The defense is based on the bill of sale set forth below:

Bill of Sale    Personal Property

KNOW ALL MEN BY THESE PRESENTS, that in consideration of Seventy-Five Hundred & no/100————————Dollars the receipt of which is hereby acknowledged, _____ do GRANT, SELL, TRANSFER and DELIVER unto William Gilmore and Gordon Gaede their heirs, executors, administrators, and assigns, the following goods and chattels, viz: 16 head of Holstein and Guernsey heifers they will pick from my herd of Holstein and Guernsey cattle. It is warranted that these cattle are being sold free and clear of any feed bills or claims against them of any nature. It is further agreed and made a part of this sale, that if the purchasers have the cattle they pick out tested it is at their expense and the seller disclaims any responsibility as to the results of the tests, due to the fact that one of the buyers, Gordon Gaede and the seller were formerly co-owners of the cattle. The seller hereby forfeits any claim against the buyers for any 'reactors', or cattle that test bad, that he will retain in his possession, or is owned by him.

TO HAVE AND TO HOLD, All and singular, the said goods and chattels forever, and the said grantor hereby covenant with the said grantees, he is the lawful owner of said goods and chattels that they are free from all incumbrances; that he has good right to sell the same as aforesaid, and that he will warrant and defend the same against the lawful claims and demands of all persons whomsoever.

IN WITNESS WHEREOF, the said grantor has hereunto set _____ hand, this 26th day of April, A.D. 1974.
Executed in the presence of    /s/ Wayne F. Kiser

Examination of the face of the document indicates that the plaintiffs sold the cattle to the defendant Gilmore and one Gordon Gaede. The testimony presented at trial, however, shows that the plaintiffs sold the cattle to Gaede and that the defendant was involved in the transaction only as a cosigner of Gaede's note at the bank for the money borrowed to purchase the cattle.

The record does not contain a copy of the proposed instruction, nor does it show that the defendant made an objection, specifically stating the grounds for it, to the court's failure to include the proposed instruction before the jury retired to consider its verdict. Case law clearly shows that failure to comply with these requirements of K.S.A. 60-251(*a*) and (*b*) precludes a party from predicating error on the omission of instructions on appeal. *Apperson v. Security State Bank,* 215 Kan. 724, 731, 528 P.2d 1211 (1974); *Bott v. Wendler,* 203 Kan. 212, 222, 223, 453 P.2d 100 (1969).

The one exception to this rule is that a party may appeal the failure to give an instruction without strictly complying with K.S.A. 60-251 when the failure to instruct was clearly erroneous. The defendant has failed to show that such was the situation in this case. The plaintiffs alleged that the defendant's actions were in violation of the Kansas Consumer Protection Act (K.S.A. 50-623 *et seq.*). Section 50-625(*c*) of the Act provides:

"A settlement in which the consumer waives or agrees to forego rights or benefits under this act is invalid if the court finds the settlement to have been unconscionable at the time it was made. The competence of the consumer, any deception or coercion practiced upon the consumer, the nature and extent of the legal advice received by the consumer, and the value of the consideration are relevant to the issue of unconscionability."

K.S.A. 50-627(*b*) further states that the determination of whether any act is unconscionable under the Act is a question for the court, not the jury. On the facts of this case, the trial court could well have based its refusal to instruct on release on a finding that the so-called release was unconscionable. Thus, the refusal to give the requested instructions was not clearly erroneous, and therefore this Court is precluded from reviewing the question by reason of the defendant's failure to preserve the question for appeal by complying with the requirements of K.S.A. 60-251(*a*) and (*b*).

The defendant's third point on appeal was that the trial court's refusal to submit special questions to the jury constituted reversible error. The questions were three in number:

"1. Did you, the jury, find that the defendant, William Gilmore, fraudulently sold cattle to the plaintiffs?

"2. Do you, the jury, find that the defendant, William Gilmore, sold cattle to the plaintiffs in a willful, reckless, or wanton manner?

"3. Do you, the jury, find that the defendant, William Gilmore, breached any warranties in the sale of the cattle to the plaintiffs?"

K.S.A. 60-249(*b*) provides that if a party makes a written request, the trial judge may submit written interrogatories upon one or more substantial questions of disputed fact on which a decision is necessary to reach a verdict. The language of the statute suggests that the decision of whether to submit special interrogatories is a matter of discretion with the trial court. Case law clearly establishes the discretionary nature of the decision. In *Thompson v. General Finance Co., Inc.,* 205 Kan. 76, 101, 468 P.2d 269 (1970), the Supreme Court held that the decision of whether to submit special questions to the jury under K.S.A. 60-249 is discretionary, "even though the questions relate to issues of fact raised by the pleadings or evidence." The rule was stated and followed in *Plains Transport of Kansas, Inc. v. Baldwin,* 217 Kan. 2, 6, 535 P.2d 865 (1975), where the Supreme Court refused to find reversible error in the fact that the court had refused to submit special questions to the jury because the appellant had failed to demonstrate that the trial court abused its discretion.

The defendant has failed to show that the trial court abused its discretion in this case. The defendant attempts to do this by saying that if the special questions had been given, he could have determined upon which ground the jury allowed recovery of actual and punitive damages. All of the plaintiffs' theories - breach of express warranties, breach of implied warranties of merchantability, or breach of implied warranties of fitness for a particular purpose - were adequately supported by the evidence, and any of these theories would support the award of all of the plaintiffs' actual damages. Furthermore, as already discussed, either intentionally fraudulent conduct or willful, wanton and malicious conduct could equally well serve as a basis for the award of punitive damages. The court clearly and carefully in-

structed the jury on the difference between actual and punitive damages and what had to be proved in order to award either to the plaintiffs. We must assume, absent any showing to the contrary, that the jury followed these instructions. Thus, the defendant has shown no way in which the trial court's refusal to submit the special questions to the jury prejudiced him. The court did not abuse its discretion.

The last allegation of error was the court's refusal after the trial and verdict to grant a remittitur in awarded punitive damages.

Although the defendant is correct in contending that the ratio of punitive to actual damages is unusually high in this case, his analysis is based on only one facet of a multi-faceted problem. The cases he cites in his brief involve misrepresentation in sales of automobiles, real estate and stocks; assault and battery; false arrest; and slander, etc. None involve a situation in which the gravity of the defendant's acts remotely resembles the seriousness of the defendant Gilmore's.

A good statement of the rules relating to determining whether punitive damages are excessive is stated in *Will v. Hughes,* 172 Kan. 45, 238 P.2d 478 (1951):

"Was the verdict for exemplary damages excessive? It is difficult to lay down a precise rule by which to test the question of an excessive verdict for punitive or exemplary damages. [Citations omitted.] If the verdict appears to be grossly excessive it may be reduced in the same manner as excessive verdicts for actual damages. [Citations omitted.]

"The law establishes no fixed ratio by which the excessiveness of exemplary damages to the actual damages allowed is to be measured although the actual damage is sometimes considered. In assessing exemplary damages the nature, extent and enormity of the wrong, the intent of the party committing it, and, generally all the circumstances attending the particular transaction involved, including any mitigating circumstances which may operate to reduce without wholly defeating such damages, may be considered." p. 55.

The language quoted above clearly establishes that ratio is not the only factor to be considered, and in fact is not the determinative factor. Considering the purpose of awarding punitive damages, it would seem that the nature of the defendant's wrongful act should be of primary importance. In *Sweaney v. United Loan & Finance Co.,* 205 Kan. 66, 468 P.2d 124 (1970), (where, incidentally, an award of $3,000 in actual damages and $18,000 in punitive damages was upheld), the Supreme Court said:

"Punitive damages are allowed not because of any special merit in the injured

party's case, but are imposed by way of punishing the wrongdoer for malicious, vindictive, or wrongful and wanton invasion of the injured party's rights, the purpose being to restrain or deter others from the commission of like wrongs." p. 74.

The defendant's acts were of a very serious nature in this case, not only in regard to the plaintiffs, but also in regard to the public at large. Evidence was presented showing repeated violations by the defendant of Kansas law requiring that livestock imported into the state be tested for brucellosis. It was also shown that he had sold livestock to a number of buyers other than the plaintiffs in violation of his quarantine. State officers charged with enforcing the Kansas laws and regulations designed to control brucellosis testified about the defendant's recalcitrance in cooperating with them in the testing and quarantine. It must be remembered that brucellosis is not only an economic threat to a key Kansas industry (livestock), but it is also a threat to human health, for undulent fever is a critical, sometimes fatal, disease. The jury was fully aware of the enormity of the defendant's wrong when it made the determination that punitive damages of $15,000 were necessary to deter this defendant and others similarly situated from committing a wrong of this nature again. The award of punitive damages is upheld.

Judgment is affirmed.

REES, J.: I dissent. The claim for relief, cause of action (see *Hutchinson Nat'l Bank & Trust Co. v. English,* 209 Kan. 127, 129, 495 P.2d 1011 [1972]), upon which the majority relies is either nonexistent or is now newly created out of whole cloth. This case demands a new trial because of clearly erroneous instructions.

At the expense of repetition and length, recitation of matters in the record on appeal is appropriate.

Insofar as here material, the petition set forth four claims for relief, one for breach of express warranty, two for breach of implied warranties, and one for fraud. The amount of recovery sought for actual damages was the same on each of the four. Punitive damages were sought only on the fraud claim. Nowhere in the petition is there an express allegation that defendant's conduct was willful, wanton or malicious.

In the pretrial order it is stated:

"2. The remaining Issues of Fact to be determined are as follows:

"a. Whether the defendant was guilty of a breach of warranty as alleged in plaintiffs' first, second and third claims.

. . . .

"c. Whether any of the defendant's acts constituted fraud.

"d. The amount of damages, if any, that plaintiffs are entitled to.

. . . .

"3. The remaining Issues of Law to be determined are as follows:

. . . .

"b. Whether plaintiffs are entitled to punitive damages."

Nowhere in the petition or pretrial order is there reflected a contention of willful, wanton or malicious conduct other than as implicit in the fraud issue. To say defendant consented to trial of the "issue" of willful, wanton and malicious conduct and therefore a proper basis was afforded for the instructions as set forth below misses the mark. There was no meritorious ground for defense objection to the evidence the presentation and admission of which is relied upon to purportedly bring into play K.S.A. 60-215(*b*). The evidence involved was patently admissible as to the issue of claimed fraud.

The instructions included the following:

"No. 5

"If you find that plaintiff is entitled to recover, and you also find that the conduct of the defendant was wilful, wanton, malicious [*or*] constituted fraud, then in addition to the actual damages to which you find plaintiff entitled, you may award plaintiff an additional amount as punitive damages in such sum as you believe will serve to punish defendant and to deter others from like conduct. [Emphasis supplied.]

. . . .

"No. 7

"You are instructed that plaintiffs seek to recover under one of two alternate theories, the first theory being that defendant, William Gilmore, by selling cows that were diseased or exposed to disease acted in such a way as to be conduct that was wanton, malicious, willful *or* amounted to fraud.

"The plaintiffs' second theory upon which they seek recovery is that defendant, William Gilmore, breached either an expressed warranty, an implied warranty of merchantability or an implied warranty of fitness. [Emphasis supplied.]

"No. 8

"In this case the plaintiffs seek exemplary or punitive damages contending that their damages were caused by conduct amounting to wanton, wilful, malicious *or* fraud by the defendant, in disregard to the plaintiffs' rights.

"A wanton act is [defined].

"A wilful act is [defined].

"Malice [is defined].

"It is fraud for one knowing that an animal is afflicted with disease or has been exposed to such disease, or having reason to know such fact, which is not known

to the purchaser and not discernible on inspection, to sell such animal without disclosing such fact. [*Emphasis supplied.*]

"No. 9

"If you find that plaintiffs are entitled to recover and you also find that the conduct of the defendant was wilful, *or* wanton, *or* malicious *or* constituted fraud, then in addition to the actual damages to which you find plaintiffs entitled, you may award plaintiffs an additional amount as punitive damages in such sum as you believe will serve to punish defendant and to deter others from like conduct." (Emphasis supplied.)

A breach of warranty is a breach of contract. Fraud is a tort. Conduct that is willful, wanton, or malicious, without more, is neither. Willful, wanton and malicious are adjectives descriptive of wrongful conduct. Although not explicitly stated in its discussion of the jury instructions issue, the majority opinion effectively holds that willful, wanton and malicious conduct standing alone constitutes a claim for relief. I know of no authority to support that proposition. None is cited. (The most nearly forthright statement of the majority's proposition lies somewhat hidden in its discussion of whether there was error in failing to give the requested special questions. There it is said "*either intentionally fraudulent conduct or willful, wanton and malicious conduct could equally well serve as a basis for the award of punitive damages.*" [Emphasis supplied.])

I am unable to conclude other than that the jury was clearly directed that it should or could return verdicts for both actual and punitive damages (1) if it found no fraud but found willful, wanton and malicious conduct or (2) if it found no fraud or breach of warranty but found willful, wanton and malicious conduct. Instruction 5 speaks in the disjunctive. Under it punitive damages were recoverable if there was breach of warranty and willful, wanton and malicious conduct. Instruction 9 is a second statement of the same instruction. Instructions 7 and 8 also are in the disjunctive. They repeat recitation of alternate theories of recovery, fraud on the one hand and willful, wanton and malicious conduct on the other. The instructions do not accurately state the law. Defendant's right to a fair trial was substantially prejudiced.

The majority opinion incorrectly relies upon *Hess v. Jarboe,* 201 Kan. 705, 443 P.2d 294 (1968). Hess stands for the proposition that punitive damages are not recoverable for breach of contract in the absence of an *independent tort.* Further, the

independent tort must cause additional injury and "the proof of the independent tort must indicate the presence of malice, fraud or wanton disregard for the rights of others." 201 Kan. at 709. The instructions in this case permitted recovery for willful, wanton and malicious breach of contract. No independent tort involving, indicating or having as an element, willful, wanton and malicious conduct was required to be found for recovery of punitive damages upon a finding of breach of contract.

*Beverly v. McCullick,* 211 Kan. 87, 505 P.2d 624 (1973), and *Service Oil Co., Inc. v. White,* 218 Kan. 87, 542 P.2d 652 (1975), are correct representations of the law applicable under their facts. The former was a conspiracy and breach of fiduciary duty case. 211 Kan. at 98-99. Although proof of contract was involved to establish the existence of fiduciary duty (see *George v. Bolen-Williams, Realtors,* 2 Kan. App. 2d 385, 393, 580 P.2d 1357 [1978]), the claims for relief were not for breach of contract. *Service Oil* was a fraudulent concealment, not a breach of contract, case. 218 Kan. at 97.

The trial court refused to submit defendant's three requested special questions quoted in the majority opinion. Had these been submitted, with the jury verdicts as they were, and under the instructions given, it would have been possible to learn whether the jury found (1) defendant not guilty of fraud or breach of warranty but that (2) he sold the cattle in a willful, wanton or malicious manner. I understand the majority to say that answers to these special questions disclosing these findings would support the punitive damages verdict. I disagree. The situation demonstrates that in this case submission of requested special questions would have been not only helpful but advisable.

The majority is mistaken in its conclusion that the instructions as given by the court properly set forth the law. The instructions were clearly erroneous and the case should be remanded for a new trial.