(26 P.3d 721)
No. 85,014

DIANA HIBBERT, *Appellant*, v. EDGAR C. RANSDELL, M.D., *Appellee*.

Opinion filed June 22, 2001.

*Kevin L. Diehl* and *Eugene B. Ralston*, of Ralston, Pope & Diehl, LLC, of Topeka, for the appellant.

*Wayne T. Stratton* and *Anne M. Kindling*, of Goodell, Stratton, Edmonds & Palmer, L.L.P., of Topeka, for the appellee.

Before GERNON, P.J., LEWIS, J., and ROGG, S.J.

LEWIS, J.: Plaintiff Diana Hibbert instituted this medical malpractice action against defendant Dr. Edgar C. Ransdell, M.D. After a jury trial, a verdict was entered in favor of defendant. Plaintiff appeals.

In early 1994, plaintiff was given a general physical exam by defendant. During that exam, defendant found a 6.9 centimeter cyst on plaintiff's right ovary. Defendant apparently advised plaintiff that in his opinion the ovary needed to be removed, and he told plaintiff that he would perform a laparoscopy to look at the cyst and see if it was abnormal; if there was an abnormality, defendant advised plaintiff he would remove the cyst.

Prior to the surgery, plaintiff met with defendant's nurse, who discussed possible complications of the surgery with plaintiff and showed plaintiff a video about the surgery. After discussing the matter with defendant's nurse, plaintiff signed a consent for surgery. During their conversation, they did not discuss whether the surgery was necessary since defendant would make that decision after the laparoscopy was completed.

The laparoscopy was performed; the cyst, however, was hidden from defendant's view by adhesions. As a result, defendant performed a laparotomy and removed the cyst.

The aftereffects of the surgery have been devastating upon plaintiff. She initially developed a hematoma in the abdominal wall, but it was resolved without complication. However, since the surgery, plaintiff has experienced problems with voiding disfunction, bladder spasms, and incontinence. At times, the problems are so severe that plaintiff has been required to self-catheterize herself. This cre-

ates more problems because plaintiff has a recessed urethra and each time the self-catheterization is done, bacteria is introduced into the bladder.

Since the surgery was performed, plaintiff has suffered from urinary tract infections, which have been so frequent that she has been on antibiotics consistently since 1994. As a result of being on the antibiotics continuously, plaintiff has suffered from antibiotic induced colitis, diarrhea, high fever, continuous vaginal and oral yeast infections, loss of enamel on her teeth, and loss of hair. Eventually, plaintiff had a "Interstim" implanted, which sends electrical impulses to help with bladder control and to reduce pain. It is estimated she will need an operation to replace the battery in the device every 5 to 8 years.

Plaintiff contends that she suffers from these problems because of the negligence of defendant in treating her and brought this action seeking to recover her damages.

As part of her direct evidence, plaintiff produced an expert witness who testified that cysts smaller than 10 centimeters in ovulating women should be followed for 4 to 8 weeks to see if regression occurs. Most cysts, the expert testified, will resolve themselves spontaneously in 2 to 3 weeks. In plaintiff's case, defendant made no effort to determine whether this cyst would resolve itself. It appears that defendant deviated from the standard of care by not doing a follow-up exam before the surgery. In addition, plaintiff's experts testified that if the cyst did not resolve itself, then pituitary suppression by way of oral contraceptives should be considered prior to surgery. Again, defendant did not consider this option.

Defendant indicated he was uncomfortable simply waiting to see if the cyst would resolve itself because plaintiff was consistently running a fever of 101 degrees at night and because there was some fluid around the cyst. Defendant had real concerns that the cyst might become infected and made a decision to remove it without considering other options. At some point after the trial had begun and after most of the evidence had been presented, plaintiff moved the court to amend the pretrial order and allow her to submit an issue of lack of informed consent to the jury. The trial court denied the motion. As noted above, the jury ultimately found no fault on

the part of defendant, and judgment was entered in favor of defendant.

After plaintiff's motion for a new trial was denied, this appeal was filed.

## PIK CIV. 3D 123.11

In this case, the trial court gave the jury the instruction set forth in PIK Civ. 3d 123.11. This was instruction No. 12. It is plaintiff's position that the trial court erred in giving this instruction. Our standard of review of jury instructions was recently stated in *Wood v. Groh*, 269 Kan. 420, 423-24, 7 P.3d 1163 (2000):

"Errors regarding jury instructions will not demand reversal unless they result in prejudice to the appealing party. Instructions in any particular action are to be considered together and read as a whole, and where they fairly instruct the jury on the law governing the case, error in an isolated instruction may be disregarded as harmless. If the instructions are substantially correct and the jury could not reasonably have been misled by them, the instructions will be approved on appeal. [Citation omitted.]"

Instruction No. 12, which plaintiff insists was erroneously given, was taken directly from PIK 3d Civil 123.11 and stated:

"Where, under the usual practice of the profession of the defendant, Edgar C. Ransdell, M.D., different courses of treatment are available which might reasonably be used, the specialist has a right to use his best judgment in the selection of the choice of treatment.

"However, the selection must be consistent with the skill and care which other specialists practicing in the same field of expertise would use in similar circumstances."

The Notes on Use section on this instruction states that it should be given where there is a dispute as to which of two or more courses is to be pursued in administering treatment. The Kansas Supreme Court has strongly recommended the use of the instructions set forth in PIK Civ.

" 'The use of PIK instructions is not mandatory but is *strongly recommended.* The pattern instructions have been developed by a knowledgeable committee to bring accuracy, clarity, and uniformity to jury instructions. They should be the starting point in the preparation of any set of jury instructions. If the particular facts in a given case require modification of the applicable pattern instruction, or the addition of some instruction not included in PIK, the trial court should not

hesitate to make such modification or addition. However, absent such need, PIK instructions and recommendations should be followed.' " *State v. Dias*, 263 Kan. 331, 335, 949 P.2d 1093 (1997) (quoting *State v. Moncla*, 262 Kan. 58, Syl. ¶ 5, 936 P.2d 727 [1997]).

Plaintiff is particularly unhappy with the language in instruction No. 12, which told the jury: "[T]he specialist has the right to use his best judgment in the selection of the choice of treatment." It is plaintiff's position that this introduces a subjective standard element into determining a physician's negligence. In Kansas, we use an objective standard to determine physician negligence.

Plaintiff argues the phrase "best judgment" as recommended by the PIK authors in instruction No. 12 is quite subjective and could easily have confused the jury into thinking that the standard of care depended upon defendant's inner thoughts rather than his conduct. In other words, plaintiff is concerned the jury might get the impression that all that is required of a physician is that he or she use his or her "best judgment" in dealing with a patient. Plaintiff reasons that if a jury were to reach that understanding of the instruction, it could find defendant not to be responsible even if he was negligent so long as the jury believed that he had done the best he could.

We understand plaintiff's concerns; however, we point out that the instruction in question advises the jury that a specialist not only has to use his or her best judgment in the selection of choice of treatment but that the selection must be consistent with the skill and care which other specialists practicing in the same field of expertise would have used in similar circumstances. If the instruction is read and considered as written, we do not see it as being particularly misleading.

We note, however, that many jurisdictions have rejected the best judgment language when used in statutes and rules in defining the standard of care in medical malpractice actions. We note the following decisions: See *Pearce v. Cornerstone Clinic for Women*, 938 F.2d 855, 857 (8th Cir. 1991) (statutory definition creates an objective standard; adding the language " 'using his best judgment' " inserted subjective considerations into the objective standard and trial court improperly instructed the jury on Arkansas law); *Hira-*

*hara v. Tanaka*, 87 Hawai'i 460, 465, 959 P.2d 830 (1998) (relevant standard of care is objective; jury must focus on whether physician breached that standard of care; informing jury that physician not negligent for utilizing best judgment to choose among acceptable alternatives is unnecessary); *Parodi v. Washoe Medical Ctr.*, 111 Nev. 365, 370-71, 892 P.2d 588 (1995) (agreeing with growing number of courts rejecting the error-in-judgment instruction; may confuse jurors to focus on health care provider's subjective intentions and judgments, rather than whether provider's conduct conformed to an objective standard of care); and *Rooney v. Medical Center Hospital of Vt., Inc.*, 162 Vt. 513, 520, 649 A. 2d 756 (1994) (instruction using the phrase "best judgment" improperly permitted jury to conclude a physician who lacked the requisite skill or knowledge was not liable provided "she used her best judgment and reasonable care in the exercise of whatever skill or knowledge she did possess, however limited"). There are other cases and articles to the same effect which have been cited in plaintiff's brief.

Defendant points out the instruction is recommended by the authors of the PIK instruction manual, which, in turn, is highly recommended for use by the Kansas Supreme Court. He points out that this case fits squarely within the PIK committee's recommendation for use of the instruction.

Defendant cites to us cases from other jurisdictions which have approved the "best judgment" language. See *Sisson by and through Allen v. Elkins*, 801 P.2d 722, 727 (Okla. 1990) (standard of care required physician to exercise the care, skill, and learning ordinarily exercised by other physicians under similar circumstances; allowing physician to exercise his best judgment within these boundaries was not contrary to statute); *Fragale v. Brigham*, 741 A.2d 788, 790-91 (Pa. Super. 1999), *appeal denied* 563 Pa. 629, 758 A.2d 662 (2000) ("best judgment" and/or "mere error of judgment" instructions were not erroneous as reflecting outmoded and abrogated language).

As we pointed out earlier, if the instruction is carefully read, it does not permit a jury to absolve a defendant who uses his or her best judgment when that best judgment is not consistent with the special degree of skill and knowledge possessed by other specialists

in the field. Further, the trial court gave instruction No. 13 to the jury, based on PIK Civ. 3d 123.12, that directed it to apply an objective standard:

"A physician who holds himself out to be a specialist in a particular field of medicine has a duty to use his skill and knowledge as a specialist in a manner consistent with the special degree of skill and knowledge ordinarily possessed by other specialists in the same field of expertise at the time of the diagnosis and treatment. A violation of this duty is negligence."

If PIK Civ. 3d 123.11 is given to a jury, it is best to also instruct the jury on the objective standard applied in determining physician negligence; an example of such an instruction can be found in PIK Civ. 3d 123.12.

We ultimately conclude that while plaintiff's argument is not entirely without merit, the use of instruction No. 12 in this case does not amount to reversible error. As we review the instructions, they were substantially correct, and we do not see how the jury could reasonably have been misled by the instructions if they were carefully read and considered. In addition, instructions Nos. 12 and 13 were based directly on PIK; our Supreme Court has strongly recommended the use of those instructions and appears to have accepted the best judgment language as a proper statement of the physician's duties in its decision in *Smith v. Welch*, 265 Kan. 868, 881-82, 967 P.2d 727 (1998).

In the final analysis, we are duty bound to apply the settled law in this state. As we see the settled law in this state, it is to the effect that PIK instructions are strongly recommended and should be given. In addition, we conclude that our Supreme Court has approved the best judgment language as a proper statement of a physician's duties in general. We affirm the decision of the trial court in the giving of instruction No. 12.

## AMENDMENT OF PRETRIAL ORDER

At a point in the trial when only defendant's expert was left to testify, and at a point when the parties were reviewing jury instructions, plaintiff moved to amend the pretrial order to allow her to argue to the jury a cause of action based upon a failure of informed consent. The trial court denied this motion, and plaintiff argues on

appeal that the denial was error. The granting or denying of a motion to amend is generally left to the discretion of the trial court. *Butler v. HCA Health Svcs. of Kansas, Inc.*, 27 Kan. App. 2d 403, 420, 6 P.3d 871 (1999).

We see no abuse of discretion by the trial court in denying the motion. As defendant pointed out to the trial court, the pretrial order did not include an issue on failure of informed consent. Further, the case had been tried largely on the issue of negligence, and the informed consent issue was not raised until the trial was nearly over and after defendant had already testified. In general, a pretrial order should supersede pleadings and control the future course of the action unless modified to prevent injustice.

Plaintiff takes the position that the issue of implied consent was tried by the express or implied consent of the parties and should be treated as if it had been raised in the pleadings in accordance with K.S.A. 2000 Supp. 60-215(b). If this were true, certainly the trial court would have been within its discretion in permitting plaintiff's amendment.

Plaintiff argues this issue was tried by implied consent because substantial evidence was introduced without objection that defendant represented to her that surgery was the only way to proceed and substantial evidence was introduced that a nonsurgical option was available to see if the cyst regressed and was absorbed into the body. This court has indicated that a party's failure to object to evidence tending to prove an issue not alleged in the pleadings constitutes implied consent to trying that issue. *Kiser v. Gilmore*, 2 Kan. App. 2d 683, Syl. ¶ 3, 587 P.2d 911 (1978), *rev. denied* 225 Kan. 844 (1979).

In the final analysis, our decision on this issue need not be based upon whether the issue of informed consent was tried by the implied consent of the parties. The evidence as to whether it was tried by implied consent is murky and somewhat unclear. The fact is, K.S.A. 60-215(b) does not require a trial court to permit the amendment to a pretrial order even if the issue was tried by the implied consent of the parties. The statute only says that a trial court "may" allow an amendment under such circumstances, not that it "must."

The final decision is entrusted to the discretion of the trial court. The statute provides that when issues not raised in the pleadings are tried by implied consent, "the pleadings will be regarded in support of the judgment entered, as having been admitted to conform to the proof *providing no injustice or disadvantage is thereby occasioned to the opposing party*." (Emphasis added.) *Speer v. City of Dodge City*, 6 Kan. App. 2d 798, 801-02, 636 P.2d 178 (1981).

In this case, we conclude there clearly would have been an injustice or disadvantage to the defendant if the pleadings had been amended to add a new cause of action after defendant had testified and put on most of his evidence. Accordingly, we hold the trial court did not abuse its discretion in not allowing plaintiff's amendment under the circumstances when the addition of a new legal theory would have prejudiced defendant. See *Brown v. United Methodist Homes for the Aged*, 249 Kan. 124, Syl. ¶ 4, 815 P.2d 72 (1991); *Herrell v. Maddux*, 217 Kan. 192, 194-95, 535 P.2d 935 (1975).

Affirmed.